## TILTON ET AL. *v.* MISSOURI PACIFIC RAILROAD CO.

No. 49.   Argued January 7, 1964.—Decided February 17, 1964.

*Philip B. Heymann* argued the cause for petitioners. On the brief were *Solicitor General Cox, Assistant Attorney General Douglas, Alan S. Rosenthal* and *Richard S. Salzman.*

*Robert W. Yost* argued the cause and filed a brief for respondent.

*George S. Parish* filed a brief for the Veterans of Foreign Wars National Rehabilitation Service, as *amicus curiae,* urging reversal.

*Clarence M. Mulholland, Edward J. Hickey, Jr.* and *Richard R. Lyman* filed a brief for the Railway Employes' Department, AFL–CIO, as *amicus curiae,* urging affirmance.

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

Since 1940 Congress, as an integral part of selective service legislation, has protected the reemployment rights of veterans.[1]  The principle underlying this legislation is

---

[1] Section 9 of the Universal Military Training and Service Act, 62 Stat. 614, as amended, 50 U. S. C. App. § 459, provides in relevant part as follows:

.            .            .            .            .

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

.            .            .            .            .

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the

that he who is "called to the colors [is] not to be penalized on his return by reason of his absence from his civilian job." *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U. S. 275, 284. Petitioners, reemployed veterans, sued respondent railroad, their employer, in the District Court for the Eastern District of Missouri.[2] They claimed that they have been deprived of seniority rights to which they are entitled under the Universal Military Training and Service Act and the applicable collective bargaining agreement.

The District Court[3] held that petitioners were not entitled to the relief they sought. The Court of Appeals

---

nearest approximation thereof consistent with the circumstances in his case,

"unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

.        .        .        .        .

"(c)(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) of this section shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) of this section should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

[2] Petitioners were represented by the United States Attorney, pursuant to the provisions of 50 U. S. C. App. § 459 (d). The Railway Employes' Department, AFL–CIO, has filed in this Court a brief *amicus curiae* opposing petitioners' claims.

[3] The opinion of the District Court is not reported.

for the Eighth Circuit affirmed. 306 F. 2d 870. We granted certiorari, 372 U. S. 905, because of the importance of the question in administering the statute protecting veterans' reemployment rights. For the reasons stated below, we reverse the judgments of the Court of Appeals.

The facts are not in dispute. Petitioners were initially employed by respondent railroad as carmen helpers. At the time of their original employment and since, the railroad has suffered from a shortage of qualified journeymen carmen mechanics. The collective bargaining agreement between the union representing the carmen, the Brotherhood Railway Carmen of America, and the railroad has provided methods for alleviating this shortage.[4] Whenever the railroad is unable to employ persons presently qualified as carmen mechanics, the agreement provides for the advancement or "upgrading" of carmen helpers to provisional carman status. Representatives of the railroad and the union jointly select the helpers to be so advanced. A helper thus "upgraded" can then be employed by the railroad to perform the work of a journeyman carman mechanic and is entitled to be paid a carman mechanic's wage.

Under the labor agreement, however, the "upgraded" helper does not immediately acquire permanent seniority

---

[4] The agreement provides in pertinent part:

"A helper who has been or who is later advanced to carman will retain seniority as helper. When he has completed a total of 1040 days of service as carman he shall be considered as a qualified carman. At the completion of the 1040 days of service he will make his choice in writing to acquire a seniority date as carman as of the ending date of the 1040 days of service as such and relinquish his seniority as helper. If he fails to do so he will return to status of helper and will not again be considered in the selection of men for advancement under this agreement. He may, however, at a later date be employed as a carman and acquire a seniority date as carman as of the date so employed but will automatically lose seniority as a helper."

as a journeyman. He retains his seniority as a helper until completing 1,040 days of actual work as a carman mechanic. At the end of that time the upgraded helper is considered a "qualified carman." He may then acquire a seniority date as a journeyman by making an election to that effect in writing.

Petitioners were upgraded from carmen helpers in accordance with the terms of the agreement. They were subsequently inducted into military service. At the time of his induction, Tilton had worked 145 days as a carman, Beck 851 days, and McClearn 21 days. Upon his honorable discharge from military service, each petitioner promptly returned to employment at the railroad, was reemployed as an upgraded carman, and thereafter satisfactorily completed the remainder of the 1,040-day work period necessary to qualify for journeyman status. Each, thereupon, immediately elected to acquire seniority as a journeyman carman mechanic. In each case, the railroad established petitioners' seniority as journeymen as of the date each actually completed the 1,040-day work period. As a result, petitioners had journeyman seniority junior to that of some carmen who had been upgraded to provisional carman status after petitioners were so advanced but who—because they were not absent in military service—were able to complete the 1,040-day service requirement before petitioners.

These nonveterans are now ahead of petitioners on the journeymen carmen's seniority roster and enjoy the advantages which seniority dictates, such as work preference and order of layoff and recall.

Petitioners contend that under this arrangement their absence in military service improperly affected their seniority because nonveteran employees who were junior on the temporary upgraded list are now senior on the permanent carmen's list.

Petitioners' claim rests upon §§ 9 (c)(1) and 9 (c)(2) of the Universal Military Training and Service Act. In § 9 (c)(1) Congress directed that veterans returning from military service be restored to their civilian employment "without loss of seniority." This provision was first enacted as part of the National Guard Act, Joint Resolution of August 27, 1940, c. 689, 54 Stat. 858. The Chairman of the House Military Affairs Committee in reporting the conference and final version of the bill explained that one of the purposes of the reemployment provisions was to ensure restoration of the veteran to his "seniority status." 86 Cong. Rec. 10761. The reemployment provisions, including what is now § 9 (c)(1), were carried over into the Selective Service Bill, 86 Cong. Rec. 10922–10923, and became § 8 of the Selective Training and Service Act of 1940, 54 Stat. 885, 890, as amended, 50 U. S. C. App. (1946 ed.) § 308.

In *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U. S. 275, the Court first considered and specifically interpreted the language in § 8 (c) of the 1940 Act [5] dealing with restoration to veterans of their civilian employment "without loss of seniority." The Court said: "Congress recognized in the Act the existence of seniority systems and seniority rights. It sought to preserve the veteran's rights under those systems and to protect him against loss under them by reason of his absence." *Id.*, at 288. The Court observed:

"Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." *Id.*, at 284–285.

---

[5] The present § 9 (c)(1) is a reenactment of § 9 (c)(1) of the Selective Service Act of 1948, 62 Stat. 604, 614, as amended, 50 U. S. C. App. § 459, which had reenacted § 8 (c) of the Selective Training and Service Act of 1940.

This "escalator principle" was reaffirmed by the Court in *Trailmobile Co.* v. *Whirls,* 331 U. S. 40, and restated in *Oakley* v. *Louisville & Nashville R. Co.,* 338 U. S. 278, 283:

> "[A]n honorably discharged veteran, covered by the statute, [is] entitled by the Act to be restored not to a position which would be the precise equivalent of that which he had left when he joined the Armed Forces, but rather to a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment."

Following these decisions Congress, in 1948, expressly approved the "escalator principle" and continuous employment standard applied by the Court by adopting § 9 (c)(2) of the present Act which provides:

> "It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) of this section should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 62 Stat. 604, 615–616, as amended, 50 U. S. C. App. § 459 (c)(2).

Section 9 (c)(2), in effect, confirms the Court's interpretation of the meaning of § 8 (c) of the 1940 Act which is identical with § 9 (c)(1) of the present Act. *McKinney* v. *Missouri-Kansas-Texas R. Co.,* 357 U. S. 265, 271.

It was in light of this background that the Court decided *Diehl* v. *Lehigh Valley R. Co.,* 348 U. S. 960, which

petitioners contend, and which we agree, controls the present case. *Diehl* involved facts and issues virtually identical with those now before us. Diehl, like petitioners, was a railroad carman helper temporarily "upgraded" to carman status. He was inducted into military service while holding this upgraded position and, upon his return was restored to it. The collective bargaining agreement between the railroad and the union provided that upgraded carmen who had completed 1,160 days of work in that capacity could elect journeymen carman status. Upgraded men junior to Diehl had completed the requisite work period while he was in service and had been given seniority ahead of Diehl. Upon completion of the training period, Diehl protested claiming, as petitioners do here, that under §§ 9 (c)(1) and 9 (c)(2) of the Act, he was entitled to seniority as of the earlier date on which he would have completed the work period but for his absence in military service. The United States Court of Appeals for the Third Circuit decided against the veteran, on the ground that the Act protects only rights which are a mere function of time in grade and does not entitle the veteran to be treated as if he had been actively employed or trained during the period of military service. This Court reversed, *per curiam*, holding that "[u]pon the facts disclosed in the opinion of the Court of Appeals for the Third Circuit, 211 F. 2d 95, the applicable Acts of Congress, and the opinion of this Court in *Oakley* v. *Louisville & Nashville R. Co.*, 338 U. S. 278, the judgment of the Court of Appeals is reversed." *Diehl* v. *Lehigh Valley R. Co.*, 348 U. S. 960.

Although it would be difficult to conceive of a more applicable and controlling precedent, the court below attempted to distinguish *Diehl* on the ground that there it had been stipulated that the claimant "would have

completed" the work period on a given date if there had been no military service interruption.[6]   306 F. 2d, at 877. "These stipulated words," the court said, "imply that the work completion was not dependent upon prior resolution of any contingency or uncertainty." *Ibid.*  This case, unlike *Diehl* the court declared, "lacks the essentials of the automatic in the entire system of promotion from carman helper to full-fledged carman." *Ibid.*  This distinction, in our view, is untenable.

There is no room for doubt in this case that "on the moving escalator of terms and conditions affecting [this] particular employment," *Oakley* v. *Louisville & Nashville R. Co.* 338 U. S. 278, 283, had petitioners remained continuously on the job during the period of their military service, they would have completed the work period and qualified as journeymen in advance of those who passed them in seniority during their absence.   Each petitioner was entitled, under the labor agreement, to do carman's work ahead of any upgraded after him.   It was only because of petitioners' military service that men upgraded after them were able to work more days as provisional carmen and to qualify as journeymen before them.   But for their absence, petitioners would have qualified as journeymen carmen and achieved the seniority dates they now claim.   This was confirmed by the testimony of the railroad's Chief Personnel Officer, Mr. Smith, who in effect conceded that the railroad under the collective bargaining agreement had no discretion to refuse journeyman's

---

[6] It is not absolutely clear that there was such a stipulation in *Diehl*.  The Court of Appeals in *Tilton* said: "The parties in their briefs here both refer to a stipulation in Diehl.  We find no clear reference to a stipulation in the opinions of either the Third Circuit or the district court.  Inasmuch, however, as the plaintiffs' present counsel argued the Diehl case in the Supreme Court, we assume the existence of the stipulation."   306 F. 2d, at 877, n. 8.

status to a helper who had successfully completed the work period:

"Q. Now, you have testified that these men, when they completed their three years or thousand and forty days of work, did not automatically acquire carman seniority. As soon as they made an election, the railroad had no choice but to give them the seniority, did it?

.    .    .    .    .

"A. [Mr. Smith] That's right.

"Q. In other words, as soon as they completed the work requirement, made the election as of that time, they became carmen and drew a seniority date?

"A. [Mr. Smith] Correct."

It is evident, therefore, that promotion upon completion of the training period was as automatic here as in *Diehl.*

The Court of Appeals, alternatively, refused to follow *Diehl* on the assumption that it was overruled *sub silentio* by the subsequent decision of this Court in *McKinney* v. *Missouri-Kansas-Texas R. Co.,* 357 U. S. 265. The court below interpreted *McKinney* to hold that for a veteran to be entitled to an advancement in status, "the promotion in question [must] be automatic and . . . seemingly . . . automatic as a matter of foresight rather than of hindsight." 306 F. 2d, at 876. The court concluded that advancement to journeyman carman status in the instant cases did not meet that standard because it was subject to certain contingencies or "variables": lay-offs due to illness or reduction in force; the continuing unavailability of enough qualified carmen to fill carmen's positions; continuing satisfactory work by petitioners in the upgraded position; and petitioners' decisions as to whether or not to elect full carman status.

306 F. 2d, at 877.[7]   Accordingly, the Court of Appeals held the eventual acquisition by petitioners of journeyman carman status could not have been foreseen with absolute certainty at the time they entered military service and that, under *McKinney,* they were therefore not entitled to seniority status as of the date they would probably have achieved it but for their military service.

In this reading of *McKinney,* the Court of Appeals erred.   *McKinney* was not intended to and did not overrule *Diehl.*   Nor did *McKinney* establish a requirement of absolute foreseeability.   That case did not involve the *Diehl*-type situation where advancement depends essentially upon continuing employment.   It turned upon the fact that the collective bargaining agreement there in issue made the exercise of management discretion a prerequisite to promotion.   The Court concluded, therefore, that the advancement was not basically dependent upon continued employment.   This is clear from the Court's statement that:

> "Promotion to a group 1 position from group 2, in which petitioner had formerly been employed, is not dependent simply on seniority.   Under Rule 1 (3) (A) of the collective bargaining agreement it is dependent on fitness and ability and the exercise of a discriminating managerial choice. . . .   The statute does not envisage overriding an employer's discretionary choice by any such mandatory promotion."   357 U. S., at 272.

Furthermore, the Court's mandate in *McKinney* supports the view that the Court did not adopt a rule of absolute foreseeability.   In remanding the case, the Court granted McKinney leave to amend his complaint to allege, if such was the fact, that in practice under the

---

[7] These contingencies were present in *Diehl* but did not bar relief.

collective bargaining agreement "advancement from group 2 to group 1 is automatic." 357 U. S., at 274. If the Court had intended to adopt a rule of absolute foreseeability of automatic advancement, it would not have permitted McKinney to amend his complaint. It was apparent that McKinney, when he left for service, could not have predicted with absolute certainty that a group 1 position would fall vacant in his absence; that he would be in adequate health to bid for it; that he would elect to bid for it; and that he would not have lost his lower position because of unsatisfactory performance. Properly read, therefore, *McKinney* holds that where advancement depends on an employer's discretionary choice not exercised prior to entry into service, a returning veteran cannot show within the reasonable certainty required by the Act that he would have enjoyed advancement simply by virtue of continuing employment during the time he was in military service.[8]

It would be virtually impossible for a veteran to show, as the Court of Appeals would require, that it was absolutely certain, "as a matter of foresight" when he entered military service, that all circumstances essential to obtaining an advancement in status would later occur. To exact such certainty as a condition for insuring a veteran's seniority rights would render these statutorily protected rights without real meaning. As Benjamin Franklin observed, "In this world nothing is certain but death and taxes." In every veteran seniority case the possibility exists that work of the particular type might not have been available; that the veteran would not have worked satisfactorily during the period of his absence; that he might not have elected to accept the higher posi-

---

[8] The only discretion in the present case was that vested in the railroad and union to select from among the carmen helpers those to be upgraded. This discretion had been exercised in petitioners' favor prior to their entry into military service.

tion; or that sickness might have prevented him from continuing his employment. In light of the purpose and history of this statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights. "This legislation," the Court said in *Fishgold* v. *Sullivan Drydock & Repair Corp., supra,* at 285, "is to be liberally construed for the benefit of those who left private life to serve their country . . . ." So construed, we conclude that Congress intended a reemployed veteran, who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service. This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur.

This does not mean that under §§ 9 (c)(1) and 9 (c)(2) the veteran, upon returning from service, must be considered for promotion or seniority purposes as if he had continued to work on the job. A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period, as petitioners did here, he can insist upon a seniority date reflecting the delay caused by military service. Any lesser protection, would deny him the benefit of the salutary provisions of §§ 9 (c)(1) and 9 (c)(2) of the Universal Military Training and Service Act. The judgments of the Court of Appeals are reversed and the cause remanded for proceedings in conformity with this opinion.

*Reversed and remanded.*