Martha **DYER**

v.

**HOLSTON MANUFACTURING COMPANY.**

Civ. A. No. 4940.

United States District Court
E. D. Tennessee, N. D.
Sept. 11, 1964.

John D. Black, Knoxville, Tenn., for plaintiff.

M. W. Egerton, Jr., Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is a suit for declaration of plaintiff's rights under the Universal Military Training Act, Section 9, 50 App.U.S.C. § 459. Plaintiff seeks a declaration that she was entitled to be re-employed by the defendant upon her return from military service and sues for loss of salary from the date of refusal of re-employment to the present time.

Plaintiff claims that when she entered the military service she was working as a string knitter for the defendant with a seniority date of January 1, 1955, and that she worked until January 4, 1957 at which time she was placed on temporary layoff due to lack of work.

She claims that she remained in the layoff status until January, 1958 when she entered the military service. She was discharged from the military service under honorable conditions on March 6, 1960 and claims that she made timely application for re-employment and was told that she would be recalled in the near

future, being given a slip placing her in a temporary layoff status.

During the intervening years after this time, although she was sick with hepatitis for about seven months, the defendant did not recall her to work.

In November of 1961 while still in a temporary layoff status, she re-entered the military service and continued in the service until June, 1963 at which time she was again discharged under honorable conditions and made timely application for reinstatement with the defendant. She claims that she was first informed that she would be recalled within a few days, and then received a form in the mail indicating that she voluntarily had quit work. She protested the wording in this form and was given a second form which indicated she was terminated by reason of abolishment of her job while she was in the military service.

Plaintiff further claims that the employees of the defendant from both her and other departments and new employees were re-trained on a different machine during the time between the first layoff in 1957 and her last application for re-instatement. The machine which plaintiff originally worked on is no longer in operation.

Plaintiff claims that she is physically and mentally capable of performing the task required on the new Comet machine which the defendant now operates and contends that a position on this machine constitutes a position of like seniority, status and pay under the provisions of Section 459, Universal Training Act.

In response to the theory of plaintiff, the defendant says that the Universal Military Training Act preserves rights that were in existence at the time the employee entered military service and does not create new rights in the employees simply by reason of volunteering for military service.

Defendant says further that plaintiff had a poor disciplinary record; that she was laid off in January of 1957 and that she only worked three days in October, 1957, and has not worked since that time. Plaintiff was employed as a string knitter and seniority in that department, as well as all departments of the company, was based on the particular type of machine, not on a departmental or plant-wide basis. As a string knitter she was laid off and recalled without regard to seniority of employees working as Comet knitters, rib knitters, transfers, and so forth.

Defendant says further that in January when plaintiff was laid off, string knitting was in fact a dying craft. By January of 1958, when plaintiff first entered the service, all employees junior to her had been terminated or those with other experience had been given a chance at other jobs.

When plaintiff entered the service in January of 1958 her right with the company was to be recalled if string knitting was resumed in accordance with her seniority on the string knitter seniority list. But in 1959 string knitting was discontinued and none has been performed at the company since then.

Since plaintiff was released in 1960 she has continued on the layoff status. She presumably continued in that status until 1961 when she re-entered military service. She returned in 1963 and she remains in layoff status as a string knitter. However, the string knitting seniority list as a practical matter is without value unless unforeseen circumstances occur, because string knitting is no longer done.

Defendant denies that plaintiff requested a job within 90 days of her first discharge or within 90 days of her second discharge from military service.

The issues as set forth in the pretrial order are:

(1) Was plaintiff's work terminated before she entered the military service and after she returned from service, so as to preclude her from enforcing rights under the Universal Military Training Act?

(2) If plaintiff is entitled to recover she would receive the reasonable value of her services since she returned from the service June 4, 1963 as she worked on a piecework basis.

(3) In the event plaintiff is entitled to recover, what is the amount of the damages?

With permission of the Court, and by agreement of the parties, a fourth issue was added during the trial which is as follows: Did plaintiff apply for work with the defendant within 90 days from release from military service on March 9, 1960?

The parties have stipulated to many, if not all, of the material facts, some of which are that seniority of plaintiff was, and at all times material to the issues in this case, maintained by jobs within departments; that employees have the right only to the seniority list maintained for each particular job, that is, string knitters, Comet knitters, rib knitters, and so forth; and that employees are recalled or laid off on the seniority list of the particular job without regard to whether or not other employees with greater or less departmental or plant seniority continue working in other jobs; that in some cases employees have over the years by transfer to other jobs acquired seniority status on more than one job. In such cases they have rights on these other seniority lists. Plaintiff had seniority only on the string knitter seniority list.

Plaintiff's employment by the defendant began in 1954 when she worked 480.8 hours. She worked the first and second quarters in 1955, did not work during the third quarter, but worked during the fourth quarter. Her work during the year 1956 was comparatively limited. In the first quarter she worked 48 hours, in the second quarter 71.8 hours, in the third no hours, and in the fourth 125.2 hours. Her work in 1957 was almost nil. In the first quarter she only worked 32 hours and did not do any work in the second and third quarters and only 22 hours in the fourth and last quarter of 1957.

The string knitting sales of the company decreased from 104,440 dozen pairs in 1955 to 9,714 dozen pairs in 1959 and to zero in 1960, thus confirming the position of the company that string knitting, the craft in which plaintiff worked, became non-existent.

Plaintiff entered the military service on January 28, 1958 and was released March 9, 1960. Thereafter, on November 22, 1960 she was given a separation notice by defendant indicating a lay-off date of January 4, 1957.

Plaintiff re-entered military service on November 29, 1961 and was released on June 4, 1963. Thereafter, on July 31, 1963, plaintiff was given a separation notice indicating a termination date of November 22, 1960. This was corrected by notice dated August 5, 1963 to show a termination date of January 4, 1957.

At no time subsequent to plaintiff's entry into military service on January 28, 1958 has any employee junior to her worked in string knitting at defendant's plant. A few employees senior to her did some string knitting production subsequent to her entry into military service on January 28, 1958. Seven employees on the October 10, 1955 string knitting seniority list have been retained by defendant on jobs other than Comet knitting.

In addition to the stipulated facts which have been stated in detail, the Court has heard oral evidence, some of which overlapped a number of stipulated facts.

The oral evidence showed in substance that plaintiff's work did not come up to the standards fixed by the company. Plaintiff's foreman, Mr. Black, if he is correct in his testimony, was painstaking with plaintiff in an effort to get her to take an interest in her work. On occasions he consulted with her and pleaded with her and her mother in an effort to get her to change her habits by taking a greater interest in her work and doing more efficient work. The substance of his testimony was that she became disinterested in her work and on occasions when she was expected to be at

work he could not locate her and that her work was faulty at intervals.

**■** The stipulated facts, as well as the testimony, show that on the dates that plaintiff entered military service she did not have a position with the company to return to after the termination of her military service for the simple reason that her craft, of string knitting, no longer existed in the company; that that form of knitting had become obsolete and other forms, particularly that of Comet knitting, had taken its place. The reason that string knitting had gone out of existence with the company was because the market for string knitting products had become non-existent.

**■** Plaintiff naturally feels that since other employees of the defendant who worked as string knitters when she did and prior to the time she did, were given other jobs with the company when string knitting became non-existent, that she should have been offered another job. The offering her another job or not offering her another job was a matter for the company which is not controlled by the Universal Military Training Act. This Act did not require the company to find another job for the plaintiff after she returned from military service. The Act only required the company to restore plaintiff to a position which she left at the time she entered military service. As previously indicated, she did not leave any position at that time because such a position no longer existed. To put it another way, the Act protects those rights which plaintiff possessed at the time she entered the military service. Kelly v. Ford Instrument Company, 298 F.2d 399, 404 (C.A.2, 1962).

**■** The Act does not create rights in an employee who enters military service which are superior to those of other employees. Aeronautical Industrial District Lodge No. 727 v. Campbell, et al., 337 U.S. 521, 525–526, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949).

**■** Plaintiff's rights must be determined within the framework of the seniority system which existed in her company at the time she entered military service. Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 174, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). See also the landmark case of Fishgold v. Sullivan Drydock and Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230.

Plaintiff is not entitled to the relief sought.

Present order in conformity with views here expressed.