Richard T. POWER, Plaintiff,

v.

**NORTHERN ILLINOIS GAS COMPANY,**
a Corporation, Defendant.

No. 64 C 1234.

United States District Court
N. D. Illinois, E. D.
April 14, 1967.

164

Jack B. Schmetterer, Asst. Atty. Gen., for plaintiff.

Richard L. Marcus, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

LYNCH, District Judge.

Plaintiff Richard T. Power has brought this action against the defendant, Northern Illinois Gas Company, for lost wages not paid to plaintiff by reason of defendant's alleged violation of the provisions of Section 9(c) of the Universal Military Training and Service Act, as amended. (50 U.S.C.App.Supp. V § 459)

Power began his employment with Northern Illinois Gas Company on November 30, 1956, in the position of a Meter Repairman's Helper. On July 1, 1957 Power was promoted to the classification of a Meter Shop Helper. On several occasions in February and March of 1957 Power performed "upgraded work" consisting of some of the duties performed by persons classified as Meter Repairmen.

On January 2, 1958 Power entered the Armed Forces of the United States. While in the military service he was involuntarily extended for a term of one year. He was released from active duty on May 15, 1962, and within 90 days after his release he applied to Northern for restoration of his position. He returned to work on June 4, 1962. During the period when Power was in the military service, Meter Shop Helpers with less seniority than Power were offered and accepted the opportunity for promotion to the classification of Meter Repairman at the company's LaGrange, Illinois, Meter Shop where Power was employed. Each of the persons promoted in Power's absence successfully completed a probationary period in the classification of Meter Repairman and this classification was made permanent.

From June 4, 1962, the day on which Power returned to work until March 30, 1964, no vacancies in the classification of meter repairman naturally resulted, nor did Northern seek to create a vacancy by demoting any person holding such a classification. When the first permanent vacancy arose in the classification of Meter Repairman on March 30, 1964, Power was offered and accepted the upgraded position. He satisfactorily completed a three-month probationary period, was permanently assigned to the classification of Meter Repairman, and was granted a seniority date retroactive to March 16, 1958. On March 25, 1966, Power left his employment with Northern.

The issue before this Court is whether Power was entitled to the position of Meter Repairman on the day he returned from the service. It has been stipulated that if Power prevails the measure of his damages is the difference between the wages he actually earned from the date of his reemployment on June 4, 1962 until the date he left Northern and the wages he would have earned had he been promoted to the classification of Meter Repairman on June 4, 1962.

Section 9 of the Universal Military Training Act requires that the re-

turning veteran who meets the conditions imposed by the statute be restored "to a position of like seniority, status, and pay." Section 9(c) (1) provides that he be restored "without loss of seniority." This same provision in an earlier Act was interpreted to mean that a returning veteran does not step back at the exact point he left his employment, but rather that he is entitled to a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284–285, 66 S.Ct. 1105, 90 L.Ed. 1230; Oakley v. Louisville & N. R. Co., 338 U.S. 278, 283, 70 S.Ct. 119, 94 L.Ed. 87.

Following these decisions Congress expressly approved the "escalator principle" by adopting § 9(c) (2) of the Act which provides:

> "It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) of this section should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

■ It has been held, however, "that where advancement depends on an employer's discretionary choice not exercised prior to entry into service, a returning veteran cannot show with the reasonable certainty required by the Act that he would have enjoyed advancement simply by virtue of continuing employment during the time he was in military service." (Tilton v. Missouri P. R. Co., 376 U.S. 169, 180, 84 S.Ct. 595, 602, 11 L.Ed.2d 590, amplifying on the holding in McKinney v. Missouri-Kansas-Texas Railroad Company, 357 U.S. 265, 78 S. Ct. 1222, 2 L.Ed.2d 1305.) When a veteran applies for re-employment he is not entitled to a position higher than the one he formerly held if advancement depends "not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer." McKinney v. Missouri-Kansas-Texas Railroad Co., 357 U.S. 265, 272, 78 S.Ct. 1222, 1227.

It is not required "as a matter of foresight" when the veteran enters the service that all the circumstances essential to his advancement will occur. As the Supreme Court noted in the Tilton case, supra, such contingencies as continued satisfactory work performance, good health and a willingness to accept the higher position will not defeat the veteran's rights. The legislation "is to be liberally construed for the benefit of those who left private life to serve their country." Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. at 285, 66 S.Ct. at 1111.

In Tilton, the Supreme Court stated:

> " * * * we conclude that Congress intended a reemployed veteran who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service. This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur."

The term "seniority" as used in the Act in 9(b) (B) and (c) is not defined, but derives its content from private employment practices and agreements. "This does not mean, however, that employers and unions are empowered by the use of transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act. * * * That intention was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country." Accardi v. Pennsylvania, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717.

■ "Seniority" covers those benefits which result from the length of tenure on the job, whether the benefits consist of the right to a better job classification, as in Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749; or the right to better working hours and less chance of layoff as in *Fishgold,* supra, or *Tilton,* supra; or the right to higher separation allowances, as in *Accardi,* supra; or the right to pay increases as in Moe v. Eastern Air Lines (5th) 246 F.2d 215, and Borges v. Art Steel, (2 Cir.,) 246 F.2d 735,

It is the contention of the defendant that Power's promotion depended on more than mere seniority; that ability and managerial discretion were involved in determining Power's right to advancement. The terms of the collective bargaining agreement in effect during the relevant period provided:

"In case of promotion to higher job classification within the bargaining unit, the factors to be considered shall be ability and seniority. Where the ability of the employes under consideration is substantially equal the employe highest on the seniority list will be the one promoted. In case of promotion if the employe who is highest on the seniority list is not selected, he shall be informed by the company of the reason why he was not promoted. The Union shall be furnished the names of employes not promoted in accordance with seniority."

The mere fact that the contract uses the word "ability" does not preclude the plaintiff from recovery. The issue is whether *in actual practice* the promotion from meter shop helper to meter repairman was "discretionary" on the part of management or "virtually automatic" on the basis of seniority. Witty v. Louisville and Nashville Railroad Company, (7th) 342 F.2d 614; and McKinney, supra, 357 U.S. at page 274, 78 S.Ct. 1222.

The evidence presented at the trial shows that during the plaintiff Power's absence in the military service twenty Meter Shop Helpers were promoted to the classification of Meter Repairman at Northern's LaGrange, Illinois, meter shop. *Without exception, these promotions followed the order of seniority.* The defendant has not cited one instance in which the order of seniority was deviated from promoting meter shop helpers to meter repairman.

■ Based on this record, the Court finds that the promotion involved no discriminating managerial choice. As applied to the LaGrange meter shop, it would seem that the term "ability" as used in the agreement only required continued satisfactory job performance. The *Tilton* case, supra, made it clear that continued satisfactory job performance is not such a contingency as will preclude advancement, if the promotion is, in other respects, automatic.

Under these circumstances, plaintiff, but for his entry into the Armed Forces, would have been promoted on March 16, 1958. This date is barely two and one-half months later than the date on which Power entered the service. Instead, Power upon his return from the service was obliged to wait nearly two years for his promotion. To uphold the actions of the defendant would do violence to the purpose of the Universal Military Training and Service Act that he who "is called to the colors [is] not to be penalized on his return by reason of his absence from his civilian job," and would render the "escalator principle" contained in the Act a nullity.

For the reasons stated herein judgment will be entered for the plaintiff.