Burke, J.
Claimant, Gregory Lungarelli, on March 6, 1964, when he was then but 17 years of age, left his position as a $64 per week messenger with a stock brokerage firm in New York City and entered the United States Army. Assigned to Vietnam, he served as a combat machine gunner in the airborne infantry. He was honorably discharged from the Army three years later, on March 10,1967.
Following expiration of his terminal leave, claimant filed for unemployment compensation benefits pursuant to the Ex-Servicemen’s Unemployment Compensation Act of 1958 (U. S. Code, tit. 5, § 8521). This statute provides that military service constitutes “ Federal service ” and that the pay and allowances received by persons in the military constitute ‘1 Federal wages ’ ’. Its effect *396 is to bring discharged servicemen within the ambit of Federal legislation making other classes of former Federal employees eligible for State unemployment compensation (see U. S. Code, tit. 5, § 8501 et seq.) “ in the same amount, on the same terms, and subject to the same conditions ” as if their Federal service and wages had been employment and wages under State law (U. S. Code, tit. 5, § 8502).
Claimant’s application for benefits was denied on the ground that, as claimant had not been fitted by education or training, either before or during his military service, for any particular civilian occupation or trade and as claimant was unwilling to return to work for his former employer (now at $70 per week rather than the former $64 per week), which position had, pursuant to another Federal statute (U. S. Code, tit. 50, Appendix, § 459), to be made available to him, he must, for purposes of determining his eligibility for benefits under section 593 of our Labor Law, be deemed to have “voluntarily separated” himself without good cause from his last employment (see Labor Law, § 593, subd. 1). This determination has been upheld through the various administrative appellate proceedings and in the court below.
This utilization of the latter Federal statute (U. S. Code, tit. 50, Appendix, § 459) in the strained fashion that it has been interpreted here, as the basis for a finding that claimant voluntarily left his last employment, seems entirely unwarranted, but even if the statute had been utilized, as would at least have been more reasonable, as the basis for a finding that he had unreasonably refused available employment and, therefore, was not entitled to benefits (see Labor Law, § 593, subd. 2), this would still seem a wholly impermissible construction of the statute, enabling it to be used to defeat another, separate benefit Congress sought to confer upon newly separated servicemen, namely that they be allowed to adjust ‘1 to civilian life and civilian jobs * * * by providing unemployment insurance comparable to the benefits available to other unemployed workers ” (Senate Report No. 2375 [1958], reprinted in 1958 U. S. Code Congressional and Administrative News, Yol. 3, pp. 4318, 4320).
Section 459 of title 50 (Appendix) of the United States Code represents a comprehensive effort by Congress not merely to *397 guarantee returning veterans that their old jobs will, if they are still qualified to fill them, be available to them on their return from service but also, where possible, to assure them re-employment at the seniority and income level they would have enjoyed had they not left their employment to enter military service (U. S. Code, tit. 50, Appendix, § 459, subd. [c], par. [1]; Tilton v. Missouri Pac. R. R. Co., 376 U. S. 169). In this statute it is expressly declared to be the “ sense of the Congress ” that a person who is restored to a position in accordance with its terms 1 ‘ should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment ” (U. S. Code, tit. 50, Appendix, § 459, subd. [c], par. [2]). “ The principle underlying this legislation is that he who is 1 called to the colors [is] not to be penalized on his return by reason of his absence from his civilian job ’ ” (Tilton v. Missouri Pac. R. R. Co., 376 U. S. 169, supra, pp. 170-171, quoting from Fishgold v. Sullivan Corp., 328 U. S. 275, 284). The present statute goes back to the Selective Training and Service Act of 1940 (54 U. S. Stat. 885) and constitutes an attempt-to make generous provision for ex-servicemen whose job careers have been interrupted by military service. However, as is obvious, such opportunity to obtain re-employment at his old job, assuming the veteran was employed when he entered the service, is of differential value to different veterans, depending upon the particular employment they had when they entered the armed forces. Most especially is this apparent with those many returning servicemen, such as the claimant here, who entered military service at a very young age from civilian employment which was most fit for a teenager rather than a mature adult, at low pay and with no foreseeable prospects for advancement with such former employer. These veterans return to civilian life, having devoted to military service those years when a young man would normally have been either completing his education or at least establishing himself in a trade or other occupation, without the training or skills necessary for ready absorption into the civilian labor market. This is not to say, however, that they may not be fitted into civilian life at a level more appropriate to their *398 age and abilities than their former employment. They must, if at all possible, be given the opportunity to readjust to civilian life and find civilian employment commensurate with whatever training, experience and added maturity they may have gained through their military service and this seems to have been precisely what Congress had in mind when in 1958 it enacted the Ex-Servicemen’s ' Unemployment Compensation Act. It seems inconceivable, then, that we should hold that Congress, when it enacted this later legislation, intended that the earlier legislation, designed merely to protect the veteran’s right to re-employment in his former occupation, should he wish to return to it, to give him this option, should in any way operate as a bar to the veteran’s receiving unemployment compensation under the 1958 act in the event that he did not wish to return to his old job. This simply turns what was intended to be a shield to protect the veteran into a sword to deprive him of rights sought to be guaranteed him under another beneficent Federal statute. It seems manifest, then, that where, as here, the only showing the Industrial Commissioner can make to justify the denial of benefits to a veteran claiming unemployment compensation benefits pursuant to the Ex-Servicemen’s Unemployment Compensation Act is the veteran’s refusal of his old job and no other, such determination must be reversed. This is all that has been shown here and on this ground alone we would reverse and remand the matter to the Commissioner.
In addition, however, even granting for the sake of argument the propriety of utilizing a veteran’s re-employment rights under section 459 of title 50 (Appendix) of the United States Code as the basis for a finding that the veteran unreasonably refused available employment and was, therefore, ineligible under State law for unemployment compensation, on the record before us it seems clear that respondent’s denial of claimant’s application for unemployment benefits was at the very least premature, if not erroneous. This determination was, as indicated earlier, based on the claimant’s admitted lack of specialized civilian training or skills as well as upon the availability of his former job, for which, it was concluded, he was “ fitted ” by such lack of training or skills. This conclusion was founded, however, at least as far as the record reveals, solely upon the *399 20-year-old claimant’s own very candid self-appraisal of the value of his military training to civilian life and civilian occupations and no attempt was made to secure a professional evaluation as to how claimant’s added maturity and experience might perhaps be utilized to find him a better position than that which he had left to enter military service. Nor was any effort made, as far as the record reveals, even to contact the Veterans’ Administration job counseling services, to which claimant has gone for counseling and testing in connection with his pursuit of a better job than that which he had left to enter the Army—this in the face of claimant’s disclosure to the hearing referee that he had contacted the Veterans’ Administration but had not as yet heard from them. This amounts, very simply, to a complete failure on the Industrial Commissioner’s part to make an adequate showing that claimant “ refuse [d] to accept an offer of employment for which he [was] reasonably fitted by training and experience ”. (Labor Law, § 593, subd. 2, pertaining to “ Refusal of employment ”, a standard which also obtains with respect to “ Voluntary separations” under § 593, subd. 1; emphasis supplied.) It was based solely on claimant’s lack of training and made no provision or allowance for any beneficial effect that claimant’s military experience might have had on his ability to obtain or hold civilian employment and no attempt was even made to consider or investigate this factor (which, on a very mundane, practical level must have had some value, if for nothing more than the fact that claimant by reason of his past military service would now not be subject to the draft, assuring any new employer that claimant would not be drafted out of any training or apprenticeship program in which such employer might wish to enroll him). The exclusion of this factor from consideration of whether claimant unreasonably refused available employment is sufficient, in our view, to warrant reversal of the order below and remand of this matter to the Industrial Commissioner for further consideration.
For the reasons given above the order appealed from should be reversed and the matter remanded to the Industrial Commissioner for a further hearing to consider claimant’s eligibility for unemployment compensation benefits.
*400 Chief Judge Fuld and Judges Keating and Bkeitel concur; Judges Scileppi, Bergan and Jasen dissent and vote to affirm on the opinion at the Appellate Division.
Order reversed and matter remitted to the Industrial Commissioner for further proceedings in accordance with the opinion herein.