Richard E. **DERKOWSKI**

v.

**BETHLEHEM STEEL CORPORATION.**

Civ. A. No. 19294.

United States District Court,
D. Maryland.

Dec. 4, 1969.

Stephen H. Sachs, U. S. Atty., for the District of Maryland, Alan B. Lipson, Asst. U. S. Atty., Sidney Salkin, Atty., U. S. Department of Labor (L. H. Sil-

berman, Solicitor of Labor, and Louis Weiner, Regional Solicitor, U. S. Dept. of Labor, on brief), for plaintiff.

John Henry Lewin, Jr., Venable, Baetjer & Howard, Baltimore, Md., for defendant.

NORTHROP, District Judge.

This is an action brought under the Universal Military Training and Service Act, Title 50, United States Code, Appendix 459(d), brought by Richard E. Derkowski against Bethlehem Steel Corporation. The purpose is to recover for an alleged failure to promote him following his return from active military service.

This case proceeds under an agreed stipulation of facts by the parties which appears in the official record in this case, but, for the purpose of this opinion, the operative facts are summarized.

Mr. Derkowski was employed by Bethlehem Steel Corporation from October 1, 1956, until May 13, 1965, when he obtained a military leave of absence and went into the armed services.

During this period of employment, plaintiff advanced through various positions to that of Electrical Repairman, Grade B. He was then earning the standard hourly wage rate of that particular job, $2.660 an hour. Up to the time of his departure for the military, he had actually worked 675 hours in these various positions. He served on active duty in the military until November 26, 1965, and was reinstated with the defendant at his former position on December 1, 1965, and earned at that time the standard hourly wage rate of $2.969.

During the month of December, 1965, he worked 199 hours in the position of Electrical Repairman, Grade B. Therefore, by December 31, 1965, he accumulated a total of 874 hours of actual work performed in that position.

Under the agreement between the defendant and the United Steel Workers of America, dated April 11, 1947, the position of Electrical Repairman was designated as a multiple-rated job with three grades established. An employee assigned to Grade C was promoted to Grade B upon the completion by him of 1,040 hours of actual work included within the job description for a fully qualified employee.

The same requirement exists in order to advance to Grade A from Grade B. This requirement of 1,040 hours was designed to provide employees in this job with the experience and training necessary to advance to the more difficult tasks performed by an Electrical Repairman, Grade A.

Had the plaintiff been able to continue to accumulate hours in the job classification Electrical Repairman, Grade B, it is undisputed that he would have been eligible for promotion to Grade A on February 2, 1966.

On December 10, 1965, the Union and Bethlehem Steel entered into a Supplemental Agreement on craft jobs which, among other things, abolished the job of Electrical Repairman and specified that the craft job of Motor Inspector would replace it.

It should be noted here, however, that the job of Motor Inspector to be performed by the former Electrical Repairmen does not differ significantly from their old jobs, since one of the jobs of Motor Inspector, identified in the Agreement, was that of Electrical Repairman, and that, too, is stipulated.

Electrical Repairmen who had attained Grade A by December 31, 1965, were slotted to become Motor Inspectors, Grade B, and those who were in Grade B or C of Electrical Repairmen would become Motor Inspectors, Grade C. An employee in either of the lower classifications of Motor Inspector after the completion of 1,040 hours of actual work in this craft job would be eligible upon successful completion of a determination test of his qualifications and abilities for advancement to the next grade.

Plaintiff, who had by December 31, 1965, accumulated less than 1,040 hours of Electrical Repairman, Grade B, was

slotted in the new craft job as a Motor Inspector, Grade C, on January 1, 1966.

Three of Derkowski's co-employees who had *not* taken leave of absence for military service and who were equal to or behind him in progression at the time he entered military service made Electrical Repairman, Grade A, during the year 1965 and were, therefore, classified as Motor Inspectors, Grade B, on January 1, 1966.

Plaintiff contends that but for his military service, he, too, would have been promoted to Electrical Repairman, Grade A, before December 31, 1965, and slotted in the position of Motor Inspector, Grade B, and that failure to promote him in this manner is contrary to the rights and benefits granted to him by Sections 9(b), 9(c) (1), and 9(c) (2) of the Universal Military Training and Service Act, Title 50, U.S.C., Appendix 459(b), 459(c) (1), and 459(c) (2). The applicable portions read as follows:

9(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

(B) If such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status and pay; or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

and under that, (c) (1)

Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] *should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.* [emphasis supplied]

Almost since its inception, these provisions have been liberally construed so as to actually benefit returning servicemen. The guiding principle of interpretation of this statute was enunciated in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed.

1230 (1946), known as the "escalator principle":

> Thus he [the veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war.

The Court in that case further pointed out, however, that this statute was not to be construed as to give the returning veteran more seniority than he would have had if he had not entered the armed services.

These principles have been re-affirmed on numerous occasions and are not now subject to attack. The issue in this case is whether, in the light of this standard and the recent cases interpreting it, Derkowski is entitled to the promotion he seeks.

█ In my opinion, the determination in this case depends on an interpretation of two cases in light of the facts before me. The first is Tilton v. Missouri & Pacific Railroad Co., 376 U.S. 169, 84 S. Ct. 595, 11 L.Ed.2d 590 (1964). In that case the petitioners were intiallly employed by the railroad as "carmen helpers." The railroad was suffering from a lack of qualified journeyman carmen mechanics, a more advanced position. In order to remedy this shortage, the collective bargaining agreement provided that carmen helpers would be upgraded to the provisional status of carman, and perform the work of carman mechanic. Under his plan, such upgraded helpers would not acquire immediate permanent seniority, but after completing 1,040 days of actual work as a carman mechanic he may, upon the making of a written election, acquire a seniority date as a journeyman. The petitioners in that case were upgraded in accordance with this agreement, and worked in the new position for some time, less than 1,040 days, before leaving for military duty. Upon their return from service, they completed their requirement, and made written election to acquire seniority dates as journeymen. The railroad

in each case established such seniority dates as of the date the 1,040 day requirement was actually completed. As a result, certain other employees who were upgraded after the petitioners, but who did not enter military service, moved ahead of the petitioner in seniority. Recognizing that work and training periods serve an important function, the Supreme Court did not hold that a returning veteran was entitled to promotion of seniority before completion of such requirements. It did hold, however, that

> [U]pon satisfactorily completing that period, as petitioners did here, he can insist upon a seniority date reflecting the delay caused by military service. Any lesser protection, would deny him the benefit of the salutary provisions of §§ 9(c) (1) and 9(c) (2) of the Universal Military Training and Service Act.

376 U.S. at 181, 84 S.Ct. at 602. In other words, under normal circumstances, upon completion of the requisite period of training, the returning veteran is entitled to an adjustment of his seniority date.

In Witty v. Louisville & Nashville Railroad Co., 342 F.2d 614 (7 Cir. 1965), an identical factual situation to *Tilton* was presented, with the one exception that the upgrading to provisional carman took place after Witty returned from service, while others previously junior to him were upgraded while he was away, and consequently completed their requirement before he did.

In remanding the case to the district court, the Seventh Circuit Court of Appeals indicated that the question to be answered in making the determination of the petitioner's entitlement to such seniority was "whether the advancement would have occurred but for the induction into the service."

With this format in mind, there can be no doubt, had there been no change in the job structure, that Derkowski, upon completion of 1,040 hours of work in the position of Electrical Repairman, Grade B, on February 2, 1966, would

have been entitled to an adjustment of his seniority as Electrical Repairman, Grade A, to take into account the time he had spent in the military service. This would have effectively placed his date of promotion to Electrical Repairman, Grade A, some time in the late summer or early autumn of 1965. The question before me, then, is whether the intervention of a new collective bargaining agreement changes this result. And that bargaining agreement, as able counsel for Bethlehem Steel Company has pointed out, wiped out the opportunity to earn additional hours and wiped out the accumulation of hours that Derkowski had earned prior to his going into the service. I do not think this agreement changes the result; and I do not think that the intent of the Act is to permit this discrimination in reference to returning servicemen.

■ It is clear from the authorities to which I have referred that an employer may not deprive an employee of seniority or a promotion if the only reason for so doing is a time difference caused by his service in the armed forces. It should be equally clear, then, that a union and employer acting together cannot accomplish this result any more than the company could if acting alone. The intervention of a new collective bargaining agreement cannot affect rights secured by act of Congress. In this case, it is undisputed that, but for his military service, Derkowski would have advanced to a position which would have entitled him to slotting in the higher grade of Motor Inspector. Since he actually completed his hours of work on February 2, 1966, in a job substantially similar to the one he held when he went away to serve his country, I feel that this completion of the requirement should relate back, taking into consideration the time spent in service. His date of attaining the position of Electrical Repairman, Grade A, should be adjusted. For seniority and promotion purposes, he should be considered to have been Motor Inspector, Grade B, as of January 1, 1966. In this way, he will no longer be junior in any respect to those who passed him while he was in the military. For purposes of computing the amount of wages due him, however, he should be considered to have been promoted as. of February 2, 1966, the date upon which he actually completed his work requirement under the provisions that existed when he departed for the military service.