532 F.2d 133
 91 L.R.R.M. (BNA) 2943, 78 Lab.Cas. P 11,340
 Jerry W. EARLS, Plaintiff-Appellee,
v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY, Defendant-Appellant.
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
Cross-Complainant-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF BOILERMAKERS et al.,
Cross-Defendants-Appellants.
 Nos. 74-2082, 74-2075.
 United States Court of Appeals,
Ninth Circuit.
 March 4, 1976.
 
 Richard R. Lyman (argued), of Mulholland, Hickey & Lyman, Toledo, Ohio, for appellant.
 John P. Frestel (argued), Michael E. Wolfson, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.
 OPINION
 Before WRIGHT and SNEED, Circuit Judges, and CHRISTENSEN,* Senior District Judge.
 WRIGHT, Circuit Judge:
 
 
 1
 The sole issue presented by this appeal is the proper method of computing a veteran's retroactive seniority date under the Military Selective Service Act (the Act) (50 U.S.C. App. § 451 et seq.). The district court granted summary judgment for the plaintiff veteran. We reverse.
 
 
 2
 The factual background of this appeal as found by the trial court based on stipulated facts is as follows. Plaintiff was employed by the defendant railway as an apprentice boilermaker on March 14, 1960. To qualify as a journeyman boilermaker, the next highest employment grade, he was required to perform 1,040 days of actual work on the job as an apprentice. Mere passage of time was an insufficient basis for promotion. After completing 342 days toward this requirement, plaintiff left his position on July 31, 1961 to perform military service.
 
 
 3
 Upon termination of his service obligation, plaintiff resumed his apprenticeship on November 12, 1965. He completed the remainder of the 1,040-day actual work requirement for elevation to journeyman boilermaker on January 22, 1969. Between November 12, 1965 and January 22, 1969 he lost 95 working days toward his work requirement due to voluntary absence, illness or disability not connected in any way to his military service.
 
 
 4
 In an attempt to comply with the Act, defendant then awarded plaintiff a retroactive journeyman's seniority date of October 11, 1964. This was arrived at by subtracting the length of military service from the date on which plaintiff actually completed the apprenticeship.
 
 
 5
 Plaintiff sued, alleging that defendant had improperly computed the retroactive seniority date. He urged that the Act required defendant, upon plaintiff's completion of the actual apprenticeship, to accord him the date he would have had if he had continued in the apprenticeship program without entering military service and without missing any actual work days. The parties subsequently stipulated that, if plaintiff had remained on the job and had worked every available working day with no absences except vacation, he would have been entitled to a seniority date of May 13, 1964 (as compared with defendant's computation of October 11, 1964).
 
 
 6
 In addition to controverting the allegations of plaintiff's complaint, defendant cross-complained against Aguilar and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers. Aguilar is a fellow employee of the plaintiff whose seniority status would be adversely affected should plaintiff prevail. The International Brotherhood is the authorized bargaining agent for both plaintiff and cross-defendant Aguilar. As such, it is authorized to process grievances over seniority with defendant.
 
 
 7
 The district court granted plaintiff's motion for summary judgment on the basis of the language of 50 U.S.C. App. § 459(c)(2) which reads:
 
 
 8
 It is declared to be the sense of the Congress that any person who is restored to a position . . . should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.
 
 
 9
 Given its literal reading, the section would apparently require a court to accept plaintiff's method of computation.
 
 
 10
 The statutory language, however, is more ambiguous than it would first appear. Section 459(c)(2) requires that the veteran be accorded the status he would have enjoyed had he continued his employment without interruption by military service. But, since the attainment of journeyman status in the instant appeal is dependent upon completion of an actual work requirement, and not mere employment, the statutory language does not clearly support plaintiff's position. While we do not suggest that the language would permit an employer to flout the purpose of the Act by treating the period of military service as "employment" but not giving it any weight in according the veteran a seniority date, see Tilton v. Missouri Pacific R. Co., 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590, 597 (1964), we do believe that it requires us to go beyond a literal reading in determining the appropriate method of computing a seniority date.
 
 
 11
 The proper application of § 459(c)(2) in computing retroactive seniority dates has never been directly determined. Initial court involvement with the statute centered instead on whether the employee was entitled to any credit for military service and not merely on how best to accomplish the statutory goal. In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), the Court announced the "escalator principle." As later restated in Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 283, 70 S.Ct. 119, 122, 94 L.Ed. 87, 91 (1949), the returning veteran is entitled:
 
 
 12
 (T)o a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position he would have held if he had remained continuously in his civilian employment.
 
 
 13
 Congress expressly adopted the "escalator principle" when it enacted 50 U.S.C. App. § 459(c)(2). Tilton, 376 U.S. at 175, 84 S.Ct. at 599, 11 L.Ed.2d at 594.
 
 
 14
 Although the Court has not addressed the exact question now before us, it has set forth several corollaries of the "escalator principle" which guide us in our decision. First, the Act must "be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." Fishgold, supra, 328 U.S. at 285, 66 S.Ct. at 1111, 90 L.Ed. at 1240.
 
 
 15
 But, the Act does not grant to the veteran "an increase in seniority over what he would have had if he had never entered the armed services." Id. at 285-86, 66 S.Ct. at 1111, 90 L.Ed. at 1240. Stated another way, the Act does not confer superseniority on the veteran to the detriment of fellow employees who did not perform military service. Trailmobile Co. v. Whirls, 331 U.S. 40, 56, 67 S.Ct. 982, 990, 91 L.Ed. 1328, 1339 (1940).
 
 
 16
 Before discussing the alternative methods of computing plaintiff's seniority date in light of these directives, it is important to make clear upon what the parties agree. All recognize that some accommodation must be made for the period of plaintiff's military service. They also accept the proposition as stated in Tilton, supra, 376 U.S. at 181, 84 S.Ct. at 602, 11 L.Ed.2d at 598 that:
 
 
 17
 A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period, as petitioners did here, he can insist upon a seniority date reflecting the delay caused by military service.
 
 
 18
 Finally, it was stipulated that this appeal is not complicated by any assertion that the plaintiff's absences from work after returning from military service are in any way connected with that period in his life.
 
 
 19
 Applying the "escalator principle" to the facts of this case, we cannot say that either method of computation violates that directive. Both place the returning veteran in a position which "reflect(s) the delay caused by military service." The variance in their respective results is due to different assumptions about the work that the veteran would have performed had he not entered the service.
 
 
 20
 Plaintiff's method of computation assumes that if he had continued his employment rather than join the military, he would have had no voluntary absences from work similar to those incurred after his return. Conversely, defendant's method assumes that plaintiff would have been absent during this period to the same extent he was actually absent after his return.
 
 
 21
 Although the accuracy of either assumption must forever remain untested, we believe that defendant's method is more likely to produce the desired result. Because it is based on the veteran's actual work history, it is more reliable than the assumption that he would have had no voluntary absences from work had he not entered the service. While each of the suggested methods produces a result which "reflect(s) the delay caused by military service" defendant's method offers greater reliability.
 
 
 22
 Moreover, plaintiff's method would result in a form of superseniority. The computation of a non-veteran's seniority date takes into account voluntary absences from actual work. Plaintiff contends that § 459(c)(2) requires the employer to ignore this same type of absences when computing a veteran's seniority date. Thus, in according to the returning veteran a seniority status which does not hold his military service against him, credit would be given for days not worked contrary to the treatment accorded non-veterans. The returning veteran who must complete an apprenticeship before being entitled to a retroactive seniority date should not receive credit for days not actually worked if those absences are unrelated to military service.
 
 
 23
 Although focused on different but related issues, language from two Supreme Court cases buttresses our holding. In McKinney v. Missouri-Kansas-Texas R. Co., 357 U.S. 265, 271, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305, 1310 (1958), the Court said:
 
 
 24
 (Section 459(c)) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors.
 
 
 25
 And in Fishgold, supra at 286, 66 S.Ct. at 1111, 90 L.Ed. at 1241 the Court stated in referring to the Act:Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position or to a position of like seniority mean no more.
 
 
 26
 In holding as we do, we recognize that this method of computation is not free of assumption. We cannot ascertain whether the veteran would have incurred non-military voluntary absences during this period with the same frequency that occurred after his return. Nonetheless, this method gives the veteran some control of his own seniority date. If in fact he misses no actual work days after his return, his seniority date will be fixed accordingly. At the same time, he will be required to meet the requirements demanded of non-veterans in comparable positions. Finally, to the extent that it gives the veteran control over his seniority date, it has the added benefit of providing an incentive to complete the apprenticeship in the minimum possible time.
 
 
 27
 The judgment is reversed and the case remanded for further proceedings consistent with this opinion.
 
 CHRISTENSEN, District Judge dissenting:
 
 28
 If we were at liberty to rewrite the Military Selective Service Act or recast the teachings of Tilton v. Missouri Pacific R. Co., 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590, 597 (1964), the majority's solution of this perplexing problem could be irresistible. But a liberal interpretation of the statute in favor of the veteran, as commended by Tilton, requires us at least to follow its express language which clearly and rationally favors the appellee veteran here.
 
 
 29
 Congress said he was entitled to be "restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 50 U.S.C. App. § 459(c)(2). Of course it can be rationalized that if he had not been in the military service he might not have earned "such status" in his employment as would have resulted from "employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." However, Congress had described his entitlement as just that. But for this, it might not be unreasonable to assume that had he not been called to the colors his employment for the period would have corresponded to his employment record following such period. There is even a question about this though, for the effect of his military service in unprovable or even imperceptible ways could have affected his subsequent work record. Congress dispensed with the necessity of speculating about these imponderables by the express provision above quoted favoring the veteran.
 
 
 30
 The further requirement of Tilton was satisfied; the parties concede that, under any construction, appellee's period of apprenticeship service was satisfactorily completed, and he now is in a position to "insist upon a seniority date reflecting the delay caused by military service". Tilton is not satisfied by rejecting the express language of the Act which favors the veteran for a competing interpretation against the interests of the veteran and in favor of a non-veteran to whom the continuous service presumption mandated by the Act does not apply.
 
 
 31
 I therefore respectfully dissent, and would affirm.
 
 
 
 *
 Honorable A. Sherman Christensen, Senior United States District Judge, District of Utah, sitting by designation