George E. GOGGIN, Plaintiff,

v.

LINCOLN ST. LOUIS, Defendant.

No. 81–0146C(A).

United States District Court, E. D. Missouri, E. D.

May 5, 1982.

Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., William H. Berger, Atlanta, Ga., for plaintiff.

Thomas M. Hanna, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, District Judge.

Plaintiff has brought suit against his employer, Lincoln St. Louis (the defendant), for damages occasioned by loss of seniority rights, wages and other benefits by reason of defendant's alleged violation of the Vietnam Era Veteran's Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021–2026 (hereinafter referred to as the Act).

Jurisdiction is conferred upon the Court by 38 U.S.C. §§ 2021–2022.

The testimony and exhibits disclose that defendant is a manufacturer of lubrication equipment employing approximately fifteen hundred people (Tr. 94). New employees without previous experience are hired in at the L level. Employees at the L level operate the most basic machine shop type machines: Drill presses, milling machines, tapping machines, hand threaders (Tr. 83). From the L bracket an employee can choose to go to the G line of endeavor (the grinding line), the M line of endeavor (the machine shop line), or the A line of endeavor (automatic screw machine department) (Tr. 75). Within each line of endeavor there are various positions designated by letter and number, the lowest number indicating the highest position within that line of endeavor.

Plaintiff was employed by defendant on September 2, 1971, at the L level. On September 21, 1972, plaintiff chose the M line of endeavor and was promoted to the lowest step in the M line, M–5, and there operated a multi-spindle type machine (a Kingsbury) (Tr. 4). Plaintiff then moved

from an M–5 to an M–5 inspector position in October, 1973 (Tr. 5). In this position plaintiff was a floor inspector and checked various equipment coming off various M–3, M–4 and M–5 machines. Plaintiff left defendant's employ as an M–5 inspector under a military leave of absence on November 27, 1973.

Prior to plaintiff's discharge from the military he notified defendant of his intention to return to work (Tr. 7). Plaintiff was discharged from the military on August 19, 1977, and was reemployed by defendant on August 29, 1977 (Tr. 7). Upon reemployment, plaintiff was reinstated in the same position he had prior to military service. (During his absence the position had been upgraded from an M–5 inspector to an M–4 inspector, but was in effect the same position.) Plaintiff worked as an M–4 inspector until his promotion to an M–1 Cim–X position on September 11, 1978.

Employees in the machine shop are represented by the International Association of Machinists and Aerospace Workers District No. 9. Terms and conditions of employment, including seniority, promotions and leaves of absence, are governed by a collective bargaining agreement between the Union and the defendant, and the collective bargaining agreement was in effect during the times of plaintiff's employ and military service.

The petition alleges that plaintiff requested to be reinstated as an M–1 (or by interpretation an M–1 Cim–X), that plaintiff was entitled to be advanced to that position, that defendant refused to so reinstate the plaintiff, and that plaintiff thereby suffered damages in the loss of seniority and wages.

Resolution of the promotional rights of the returning veteran are governed by a series of cases beginning with the inevitably quoted *Fishgold v. Sullivan Drydock Repair*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), which articulated the "escalator principle." That court, at 284–285, 66 S.Ct. at 1110–1111, said:

"The veteran 'shall be restored without loss of seniority' and be considered 'as having been on furlough or leave of absence' during the period of his service for his country with all of the insurance and other benefits accruing to employees on furlough or leave of absence. * * * Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. * * * He acquires not only the seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence."

As restated in *Oakley v. Louisville & Nashville Railroad Co.*, 338 U.S. 278, 279, 283, 70 S.Ct. 119, 120, 122, 94 L.Ed. 87 (1949), the veteran is entitled to be restored to a position which, on the moving escalator of terms and conditions affecting employment would be comparable to the position which he would have held if he had remained continuously in his civilian employment.

■ As applied to promotions, the escalator principle stands for the proposition that upon a veteran's return he is immediately entitled to the promotion he would have received if not in the military if that promotion is solely a prerogative of seniority. Veteran's Reemployment Rights, 51 Boston University Law Review 539, 549 (Fall 1971). Promotions which are dependent upon the acquisition of a certain number of years of experience or the completion of a training period are not prerogatives of seniority if the time period in question actually serves the purpose of insuring that the employee has acquired the requisite degree of skill or proficiency.

If on the other hand, the nature of the work and the actual practices of the employer demonstrate that the promotion actually vests by virtue of mere passage of time (the continuation of the legal relationship of employment), the returning veteran is entitled to have his military service time count toward eligibility for the promotion. Thus, if the promotion is purely a perquisite of seniority, the veteran is entitled to be

rehired in the higher position if the right to the promotion vested while he was in military service.

After *Fishgold*, the Court addressed the question of a returning veteran's right to promotions missed while he was in service in *McKinney v. Missouri-Kansas-Texas Railroad*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305. In *McKinney* there were three groups of employees. When a vacancy occurred in a higher group, employees in the next lower group were entitled under the collective bargaining agreement to bid on the job on the basis of seniority and were given preferences over non-employees. Final selection for the job was to be based on fitness and ability. The plaintiff was in group two when he left for military service. During his absence two vacancies occurred in group one and were filled by non-employees. The collective bargaining agreement expressly allowed an employee returning from leave of absence to exercise seniority rights on any position bulletined during his absence. Upon the veteran's return he was promoted to group one with seniority as of the date of his actual promotion. When this higher position was subsequently abolished, the veteran was reassigned to his old position in group two. The veteran sued, claiming that upon reemployment and promotion, he was entitled to seniority in group one as of the time vacancies were first posted during his service leave. This reinstatement procedure would have given the veteran seniority over another employee hired into group one and would have entitled the veteran to bump that employee out of his job.

The Court found that because the promotion was dependent on fitness and ability and the exercise of managerial discretion, the veteran was not entitled to demand the group one position. Although the employer had given the veteran the higher position upon reemployment, the employer was not obligated to do so. Id. p. 273, 78 S.Ct. at 1227. The promotion was only an incident of seniority if it "would necessarily have occurred simply by virtue of continued employment" or would have been attained as a matter of "right." Id at 272, 78 S.Ct. at 1226. Super-seniority, repudiated by *Fishgold*, would result if the veteran would leave for the service with a mere expectation of promotion and return from service with an absolute right to the position. However, the plaintiff was given leave to amend to include an allegation that McKinney's promotion was in fact automatic under the collective bargaining agreement, that in practice the promotion was determined solely by seniority without any actual exercise of discretion on the part of the employer. Thus, *McKinney* dealt with a veteran's right to a missed promotion, on its facts, the right to be reinstated in group one as opposed to reinstatement in group two.

■ However, even if a missed promotion is not found to be a perquisite of seniority that accrues through mere passage of time, the veteran may be entitled to some benefits under the Act once he has attained the promotion by satisfying the requirements that have been found to have the actual purpose of attaining or perfecting job skills. The Court in *Tilton v. Missouri Pacific Railroad Company*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964) addressed the issue of "retroactive seniority."[1] In *Tilton*, the Union and the employ-

---

1. *Diehl v. Lehigh Valley Railroad*, 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 (1954) had been decided earlier. There an employee within a seniority unit was required under the collective bargaining agreement to complete a certain period to gain experience before he could be entitled to a promotion to the next seniority unit. The veteran's training period was interrupted by military service. Upon reemployment, the veteran demanded that he be given retroactive seniority in the higher seniority unit reflecting the date he would have been promoted but for his service. The Supreme Court found that the veteran was entitled to retroactive seniority but the per curiam decision gave no reasoning to support the granting of relief. In the one sentence decision the Court stated: "Upon the facts disclosed in the opinion of the Court of Appeals for the Third Circuit, 211 F.2d 95, the applicable Act of Congress, and the opinion of this Court in *Oakley v. Louisville & Nashville Railroad Co.*, 338 U.S. 278 [70 S.Ct. 119, 94 L.Ed. 87] the judgment of the Court of Appeals is reversed." From the decision it is impossible

er agreed that due to a shortage of qualified mechanics, helpers would be provisionally promoted to mechanics. Helpers would retain their seniority in the helpers unit until they had completed their training. At that time, they could elect to become permanent mechanics and acquire seniority in the mechanics unit as of the date of their election. Plaintiff had been provisionally promoted but entered the military before completing the training period. After reemployment, the plaintiff completed the training, was promoted and given a seniority date reflecting the date he actually completed his training. The veteran sued, claiming seniority that would reflect the date he would have been reemployed but for his military service. The Eighth Circuit Court of Appeals denied retroactive seniority because the promotion was dependent on managerial determination and completion of the required training was not certain. The Supreme Court reversed, disagreeing with the lower court's view of the degree of certainty required to grant the veteran retroactive seniority in the new position. The Court found that the veteran was entitled to retroactive seniority in the new position "if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur." The Court found that the Court of Appeals had applied too strict a test to the determination of retroactive seniority, that *McKinney* did not require "absolute foreseeability." Id 376 U.S. at 179, 84 S.Ct. at 601. At 179 the Court said:

> "Properly read, therefore, *McKinney* holds that where advancement depends on an employer's discretionary choice not exercised prior to entry into service, a returning veteran cannot show within the reasonable certainty required by the Act that he would have enjoyed advancement simply by virtue of continuing employment during the time he was in military service.

to tell if the Court, (1) felt the promotion was truly automatic because the training period was not for the acquisition or perfection of skills, or alternatively, (2) felt that the promotion was not purely based on passage of time but rather the training period was a condition precedent to the promotion but upon required

The uncertainties attending the promotion that had persuaded the Court of Appeals that the promotion was not within the bounds of *McKinney* were not sufficient to defeat the veteran's rights under the reasonably certain test of *Tilton,* 376 U.S. at 180–181, 84 S.Ct. at 602, the Court said:

> "In every veteran's seniority case the possibility exists that work of the particular type might not have been available; that the veteran would not have worked satisfactorily during the period of his absence; that he might not have elected to accept the higher position; or that sickness might have prevented him from continuing in his employment. In light of the purpose and history of this statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights."

■ To summarize, *Tilton* established two principles: (1) That a promotion is considered a perquisite of seniority if it is "reasonably certain" that the veteran would have been promoted but for his military service, and that the above uncertainties will not defeat a veteran's right to an otherwise automatic promotion; and, (2) that the reasonably certain test can also be applied to those promotions that are not automatic, that is, that have a training period, to establish the veteran's right to retroactive seniority. Before *Tilton* it was not clear that retroactive seniority could be granted if the promotion was non-automatic.

The issue before the Court is whether the defendant's program of reemployment as applied to the plaintiff comports with the requirements of the Act.

The collective bargaining agreement between the defendant and the Union provides in Article V, Section 5:

completion the veteran was entitled to retroactive seniority. It does, however, seem illogical to require the veteran to complete a training period if that period does in fact serve no real training purpose. Thus alternative (2) seems to be the more rational explanation.

"Any employee who is drafted into military or industrial service or who volunteers in the armed forces of the United States shall be given leave of absence for, and will accumulate seniority during such period of service, and upon termination of such service shall be re-employed, provided he has not been dishonorably discharged and is deemed by the Company's physician and the Union's physician to be physically able to do available work as determined by the Company in line with his seniority at the current rate for such work and provided that he reports for work within ninety (90) days of the date of his discharge."

Article IV of the collective bargaining agreement concerns seniority. Section 4 of the article provides:

"Seniority lists will be kept by lines of endeavor and promotions and demotions will be within each line of endeavor."

Section 5 of the article provides:

"The employee having the most bracket seniority in his job classification shall be given preference in filling vacancies in the next higher classifications in his chosen line of endeavor, but his skill and ability and production record must be satisfactory. Employees so transferred shall start at the bottom of the seniority list in the job classification to which transferred but shall retain seniority in the job classification from which transferred.

"An employee who is otherwise qualified and who is on a leave of absence shall be allowed to replace a less senior employee provided the less senior employee is still on a qualifying period.

\* \* \* \* \* \*

"Employees transferred to new operations or duties in higher classifications shall be allowed thirty (30) days in which to qualify. Failing, he or she may return to their former positions."

The Company's policy for reinstatement of veterans is also discussed at pages 95 through 97 of the transcript. At page 96, a witness, Carl C. Westerhaus, said: "Let's assume a veteran returns from military service in the L bracket when he left. He would return to the L bracket. The next opening in the M–5 bracket he'd be moved in. He'd be moved in upon qualifying in the M–5 bracket, take his proper place based on veteran seniority, and so forth up the line until he reached the proper place had he been, had he never gone into military service."

At page 9 he was asked: "How do you determine his rightful position?" He answered: "It's calculated very simply, observe the employee ahead of the veteran when he went into military, and the veteran when he went into military, when he returned from military service observe where these individuals are and slot him in accordingly."

At trial, plaintiff seemingly abandoned the theory that he was entitled to reinstatement as an M–1 set-up man or an M–1 Cim–X operator. Damages were never offered based on either of these positions. Post-trial memoranda did not address the issue of entitlement to the M–1 set-up or M–1 Cim–X positions. What little testimony there was on this issue established that the company's policy was that no one could be promoted to the M–1 set-up position until he had at least one year's experience as an M–2 set-up man. The year's experience was necessary to gain proficiency on the various machines. This policy was actual practice.

In reviewing the seniority lists, no M–1 set-up man had advanced to that position without serving as an M–2 for a minimum of one year. Employee Busalaki, who had the same date of hire as plaintiff and was an M–1 when plaintiff returned, had served approximately three years as an M–2. Employee Vilchek, who was hired after plaintiff but was an M–1 when plaintiff returned, also had one year's experience as an M–2. Jerry Stone, who was hired after plaintiff and who moved to an M–1 vacancy in October, 1977, moved back to the M–2 classification after thirty days. Before taking the M–1 set-up position, Stone had been working as an M–2 for three years. There were no other employees junior to plaintiff

who held M–1 positions when plaintiff returned to work, nor did any vacancies open as an M–1 during plaintiff's absence that were taken by employees junior to plaintiff who did not have a minimum of one year's experience as an M–2. As stated by the witness Smith (Tr. 89): "The only difference between an M–2 and M–1, an M–1 has *acquired more skills* and he's learned how to set up the jobs faster and we feel he's more valuable to the company because he's acquired these skills and worked in the brackets and become more efficient than is an M–2." (Emphasis added.)

Essentially, the M–1 set-up position seems to be a simple wage increase based upon perfection of skills and not upon passage of time. Thus, the M–1 position has a valid condition precedent similar to the training period in *Tilton*. Like the employees in *Tilton*, plaintiff would have to complete this training before he would be entitled to the promotion. Then, as in *Tilton*, if the training is satisfactorily completed, the question of retroactive seniority would arise and the foresight-hindsight test could be applied. However, since plaintiff never worked as an M–2, the issue of retroactive seniority is not before the Court.

Neither is plaintiff entitled to the M–1 Cim–X position. Unlike the M–1 set-up position, there is no previous experience required to be promoted to an M–1 Cim–X (Tr. 92). However, there were no employees serving as M–1 Cim–X operators who were junior in seniority to plaintiff. From the seniority lists it appears that no vacancies as M–1 Cim–X operators occurred while plaintiff was in service. When a vacancy as an M–1 Cim–X operator did open up in September of 1978, plaintiff was offered the position and he accepted it (Tr. 19).

■ The main issue tried without objection was plaintiff's entitlement to the M–2 set-up position. Under FRCP Rule 15(b)

when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

■ When plaintiff returned from the service, six of the thirteen men serving as M–2's had less plant seniority than plaintiff. Defendant argued that no one could be promoted to the M–2 position without first serving as an M–3 (like the one year's experience as an M–2 before promotion to an M–1 position). The testimony and the exhibits do not support this argument. Defendant's own witness, Smith, testified on direct examination that it was not necessary to have experience as an M–3 to move to an M–2 set-up job (Tr. 92). Another defense witness, Venable, testified that when an opening develops at the M–2 set-up level, the M–3's are offered the position first and if no one takes the position the M–4 operators or inspectors are offered the job (Tr. 76). The seniority lists also show that employees did move from the M–4 position to the M–2 set-up position without any experience as an M–3. Since there is no actual experience necessary to move from the M–4 position to the M–2 position, since the opportunity to take the higher classification accrued on the basis of seniority alone, and since there were employees junior to plaintiff serving as M–2 set-up men upon his return, it is reasonably certain under *Tilton* that the plaintiff would have had an opportunity to accept the promotion to an M–2 but for his military service. The defendant did not bear its burden of convincing the Court that the plaintiff would not have taken the position had it been offered him and the only uncertainties attending the promotion are those which under the *Tilton* test do not defeat the veteran's right to the promotion.

However, the testimony established that upon plaintiff's return there were no vacancies in the M–2 set-up position (Tr. 40).[2]

---

**2.** The seniority lists show that two employees junior to plaintiff in plant seniority, Stillman and Overman, moved from an M–4 to an M–2 position sometime between July of 1977 and October of 1977. Plaintiff returned to work on August 29, 1977. Since the seniority lists are compiled on a quarterly basis, reflecting what employees are in each bracket as of January 1, April 1, July 1 and October 1, it is not possible to tell in which months July through October

Under the collective bargaining agreement, an employee returning from leave of absence can bump less senior employees in a higher bracket only if the less senior employee is still on the qualifying period. There was no evidence that any of the six less senior employees serving as M–2 set-up men were still on their qualifying period.

The final question, then, is, (a) whether plaintiff as a returning veteran has a right under the Act to bump employees with less plant seniority than plaintiff who have qualified in the M–2 set-up position, or (b) whether plaintiff's only right is the opportunity to accept the first M–2 vacancy that occurs after his reemployment with seniority dating either, (1) from his actual promotion to the higher bracket, or (2) from that date he would have completed the probationary period but for his military service (both 1 and 2 assume he successfully completes the qualifying period).

It has already been established that through mere passage of time the opportunity to accept and qualify as an M–2 set-up man would have accrued to plaintiff as a perquisite of seniority. But the qualifying period cannot be satisfied by passage of time alone.[3] The testimony and exhibits establish that as an M–4 inspector (plaintiff's reemployment position) an employee made periodic rounds checking on the operators to see if their work conformed to blueprint specifications (Tr. 5, 17, 87). On the other hand, the M–2 set-up man is required to set up the various machines such as the drill presses, tapping machines, milling machines, Kingsburys, Bullards, boring machines and gun drills. The M–2 set-up man runs the initial part, checks it to see if it conforms to blueprint specifications, has an inspector check it, and then puts an operator on the machine and instructs him on how to use it (Tr. 17, 18, 88, 89). To allow plaintiff to bump an employee who has acquired these new and different skills would give him super-seniority above non-veteran employees and is not mandated by *Tilton*. This situation is within *Tilton* to the extent that if plaintiff had qualified as an M–2, he may have been able to prove that it was reasonably certain that

the M–2 vacancies which Stillman and Overman filled occurred. However, both Stillman and Overman had served as M–2 set-up men previously, had completed their qualifying period, and had bracket seniority dates as M–2's as of August 11, 1975, and September 2, 1975, respectively. There is no evidence to show that employees moving back to a bracket in which they had already qualified had to re-qualify upon transfer. The collective bargaining agreement, Article IV, Section 5, which requires the qualifying period for employees transferred to *new* operations or duties and the use of the previously attained bracket seniority would suggest that there is no re-qualifying period necessary. Because both Stillman and Overman had bracket seniority as M–2's, even if the M–2 vacancies had occurred after plaintiff returned, that is, in September or October, Stillman and Overman would have been offered the position first on the basis of their earned bracket seniority. See Article IV, Sections 7, 8 and 9.

**3.** Plaintiff offers *Power v. Northern Illinois Gas Co.*, 280 F.Supp. 163, aff'd 388 F.2d 427 (7th Cir. 1968) in support of his position that he should be allowed to bump less senior employees who have already qualified as M–2 set-up men. In *Power*, employees had to serve a three-month probationary period after promotion to a higher classification. When a veteran was reemployed there were no vacancies in the higher job classification. When a position did open the veteran was given the promotion, completed his probationary period, and was given seniority retroactive to the time he left for the military. This is the approach defendant proposes in the case at bar. In *Power*, both the district court and the Court of Appeals found that the veteran was entitled to the higher position on the date he was reemployed and allowed him to bump less senior employees in that position. Both courts found that the probationary period did not result in anyone being denied the promotion and that there was no reason to believe plaintiff could not pass any tests that may have been involved. The situation in *Power* is concededly very close to that before this court. However, in *Power* there is no discussion of any additional or different skills the employee had to acquire during the probationary period. Thus the move up could have been essentially a wage increase to reward service time with the employee getting a new title but performing the same work. If that is the case, bumping would be in order since the mere passage of time would have given the veteran the higher position. As shown in the case at bar, however, there are in fact many new skills that an employee must acquire during the mandatory qualifying period at Lincoln.

**54**

he would have completed the qualifying period earlier but for his military service and, therefore, should be given retroactive seniority over employees less senior to him who nevertheless qualified as an M–2 before plaintiff.

■ This is in fact the reemployment procedure defendant proposes and is within the terms of the collective bargaining agreement. While it is true that no collective bargaining agreement can take away rights given the veteran by the Act, *Alber v. Norfolk*, 654 F.2d 1271, (8th Cir. 1981), it is also true that "Congress was not creating a system of seniority but recognizing its operation as part of the process of collective bargaining." *Aeronautical Lodge 727 v. Campbell*, 337 U.S. 521, 526, 69 S.Ct. 1287, 1289, 93 L.Ed. 1513 (1949). By affording the veteran the right to the next M–2 set-up vacancy, a right that accrued by passage of time alone, by denying plaintiff the right to bump employees who have acquired additional skills for which time alone cannot substitute, and by applying *Tilton* to determine if plaintiff is entitled to retroactive seniority in the higher position once he too has acquired these skills, the defendant and the Union have protected the rights of the returning veteran as well as the rights and valid interests of non-veteran employees.

Since the Court finds that the defendant did not violate the Act, calculation of damages, of course, is not necessary. However, the Court does point out that the testimony concerning damages was completely insufficient and by plaintiff's own testimony, speculative. The method of calculation used met none of the usual tests for determining measure of damages. See *Loeb v. Kivo*, 169 F.2d 346 (2nd Cir. 1948), cert. denied 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429; *Williams v. Sinclair Refining Co.*, 74 F.Supp. 139 (D.C.Tex.1947). See also *Spearman v. Thompson*, 173 F.2d 452, 453 (8th Cir. 1949).

Accordingly, judgment is entered for the defendant.

This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law and the clerk of the Court is directed to prepare the proper judgment in compliance with this opinion.