**TRINITY COUNTY PUBLIC UTILITIES DISTRICT, Hayfork Valley Public Utility District, Calaveras Public Power Agency, Tuolumne County Public Power Agency, Plaintiffs-Appellants,**

v.

**John S. HARRINGTON, et. al., Defendants-Appellees,**

and

**Northern California Power Agency, and Sacramento Municipal Utility District, Intervenors-Defendants-Appellees.**

No. 85–1874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1985.

Decided Jan. 23, 1986.

Dian M. Grueneich, Heller, Ehrman, White, & McAuliffe, San Francisco, Cal., Eric Redman, Heller, Ehrman, White, & McAuliffe, Seattle, Wash., for plaintiffs-appellants.

Daniel Davidson, Spiegel & McDiarmid, Washington, D.C., C. Max Vassanelli, Atty. U.S. Dept. of Justice, Washington, D.C., David S. Kaplan, Sacramento, Cal., for defendants-appellees.

Before CHOY, Senior Circuit Judge, SKOPIL and SCHROEDER, Circuit Judges.

CHOY, Senior Circuit Judge:

Appellants Trinity County Public Utility District, Hayfork Valley Public Utility District, Calaveras Public Power Agency, and Tuolumne County Public Power Agency appeal the district court's grant of summary judgment against them. The district court determined that the Trinity River Division Act and the Flood Control Act of 1962 gave appellants a first preference to energy and rates based on the Central Valley Project as a whole, rather than from the Trinity and New Melones plants. We affirm.

## FACTS AND PROCEDURE

The Central Valley Project ("CVP") is a multipurpose federal project that includes several hydroelectric plants in northern and central California. Since 1977, the Western Area Power Administration ("WAPA"), an agency of the United States Department of Energy, has had responsibility for marketing CVP power in excess of that needed by the Bureau of Reclamation.

In 1955, Congress passed the Trinity River Division Act ("Trinity Act"), which authorized the construction of power plants in Trinity County. The Act provided that the Trinity plants "shall be integrated and coordinated, from both a finanical and an operational standpoint, with the operation of other features of the Central Valley project ..." Trinity River Division Act of August 12, 1955, ch. 872, Pub.L. No. 84–386, 69 Stat. 719 (1955). The Act also accorded preference customers in Trinity County a first preference to 25 per cent of the "additional energy available from the Central Valley project system as a result of the construction of the plants herein authorized and their integration with that system ..." 69 Stat. at 720.

In 1962, Congress passed legislation authorizing the New Melones project, Section 203 of the Flood Control Act of 1962, Pub.L. No. 87–874, 76 Stat. 1180, 1191 ("New Melones Act"). The New Melones Act also provided for integration of the New Melones plants with the CVP and accorded customers in Tuolumne and Calaveras counties a first preference to power. Both the New Melones and Trinity Acts are administered in accordance with

federal reclamation law. Pub.L. No. 84–386, 69 Stat. 719 (1955); Pub.L. No. 87–874, 76 Stat. 1191 (1962).

In 1964, Congress authorized the Secretary of the Interior to import power from the Pacific Northwest for use in California through the Pacific Northwest-Pacific Southwest Intertie ("Intertie").[1] The federal government has been importing power from the Intertie into the CVP area since 1971.

On June 21, 1982, October 29, 1982, and sometime after November 30, 1983, appellants contracted with WAPA for the purchase of power, pursuant to their first preference rights. On October 1, 1982, WAPA gave notice in the federal register of a proposed rate adjustment. Although appellants objected to the proposed rates, the Federal Energy Regulatory Commission ("FERC") approved WAPA's proposed rates for a five year period, from 1983 to 1988.

Appellants sought judicial relief in a district court action in which the Sacramento Municipal Utility District ("SMUD") intervened. All parties filed motions for summary judgment. Judge Garcia denied appellants' motion and granted the motions of WAPA and SMUD. Appellants timely appeal the district court's judgment.

## STANDARD OF REVIEW

We review *de novo* the district court's ruling on questions of law concerning statutory interpretation. *Chula Vista City School District v. Bell,* 762 F.2d 762, 765 (9th Cir.1985). The district court here approved WAPA's and FERC's interpretations of the Trinity, New Melones, and Reclamation Acts. WAPA and FERC are the agencies charged with administration of these statutes. When faced with a problem of statutory construction, we accord great deference to the interpretation given the statute by the officers or agency charged with its administration and limit our review to determining whether the

agency's interpretation is reasonable. *Aluminum Co. of America v. Central Lincoln Peoples' Utility District,* 467 U.S. 380, 104 S.Ct. 2472, 81 L.Ed.2d 301 (1984); *Southern Pacific Transportation Co. v. Watt,* 700 F.2d 550, 552 (9th Cir.1983).

## DISCUSSION

### I. *Appellants' entitlement to Trinity & New Melones power*

The plain language of the Trinity and New Melones Acts, which provides for integration of the Trinity and New Melones plants into the CVP system, defeats appellants' argument that Congress intended them to receive energy exclusively from the Trinity or New Melones plants. Section 1 of the Trinity Act authorized the construction of the Trinity River Division as "an integral part of the Central Valley Project." Pub.L. No. 84–386, 69 Stat. 719 (1955). Section 2 of the Act provides that "the Trinity River division shall be integrated and coordinated, from both a financial and an operational standpoint, with the operation of other features of the Central Valley project." 69 Stat. at 720. The authorizing legislation for the New Melones project contains similar integration language. 76 Stat. 1191.

Similarly, section 4 of the Trinity Act provides that appellants' preference rights are to CVP power, and not to power from the Trinity plant:

Contracts for the sale and delivery of the *additional electric energy available from the Central Valley project power system as a result of the construction of the plants herein authorized and their integration with that system* shall be made in accordance with preferences expressed in the Federal reclamation laws: *PROVIDED* THAT a first preference, to the extent of 25 per centum of such additional energy, shall be given, under reclamation law, to preference cus-

---

**1.** Public Works Appropriations Act, 1965, Public Law 88–511 appropriated funds for construction of the Intertie.

tomers in Trinity County, California, for use in that county, who are ready, able and willing, within twelve months after notice of availability by the Secretary, to enter into contracts for the energy ... 69 Stat. 719, 720 (emphasis added). The plain language of the statute grants first preference rights to electric energy from the CVP power system, not from the New Melones or Trinity power plants.

Appellants' reliance on *Power Authority of the State of New York v. FERC*, 743 F.2d 93 (2d Cir.1984) ("*PASNY*"), and *Arizona Power Authority v. Morton*, 549 F.2d 1231 (9th Cir.) *cert. denied*, 434 U.S. 835, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977), in support of their argument that they are entitled to power from a specific source in the CVP is misplaced. In *PASNY*, preference customers successfully claimed that 16 U.S.C. § 836(b)(1) (1982), gave them a right to power from a particular source, the hydroelectric power of the Niagara Power Project. However, in *PASNY*, the Niagara Redevelopment Act, unlike the statutory provisions at issue here, did not mandate that the Niagara Power Project be operated as part of an integrated system. Our holding in *Arizona Power Authority v. Morton*, is not inconsistent with our conclusion here.[2] In *Arizona Power Authority*, the issue was not power allocations under the Trinity Act, but whether the Colorado River Storage Project precluded the Secretary of the Interior from basing power allocations on a customer's location. We held that it did not. Here, WAPA may consider appellants' geographic location in allocating power from the *CVP* system, as it has done in its proposed formula for allocating CVP power (*See* 50 Fed.Reg. 33314 (1985)).

In the WAPA proposed procedures, first preference customer power allocations are calculated from a formula based on the average output of the Trinity or New Melones power plants. Appellants argue that the allocation formula reinforces their claim to power from the Trinity or New Melones plants, as opposed to CVP power.

The allocation formula, however, is irrelevant to appellants' preference rights. The Trinity and New Melones Acts clearly state that appellants are entitled a percentage of *CVP* power. WAPA can use a formula to allocate that power based on the output of the Trinity and New Melones plants. The allocation formula does not alter appellants' rights, and it cannot be used to expand these rights to include a preferential rate in addition to a preferential power allocation.

The district court properly determined that appellants are entitled to CVP power and not to power from a specific division or project of the CVP.

## II. Rate Entitlements

Appellants argue that § 9(c) of the Reclamation Act, incorporated by reference into the Trinity and New Melones Acts, entitles them to a rate based on the operating costs of these respective plants, and not, as WAPA argues, on the costs of the CVP system as a whole. Section 9(c) of the Reclamation Act provides in relevant part as follows:

> Any sale of electric power or lease of power privileges, made by the Secretary in connection with the operation of any project or division of a project, shall be for such periods, not to exceed forty years, and at such rates as in his judgment will produce power revenues at least sufficient to cover an appropriate share of the annual operation and maintenance cost, ... and such other fixed charges as the Secretary deems proper.

43 U.S.C. § 485h(c) (1982). Appellants argue that the Trinity and New Melones plants are a "division" and "project," respectively, of the CVP, and that their rates should therefore be based on the operating costs of these respective plants.

---

**2.** It is true that in *Arizona Power Authority*, we stated, at page 1241, that Section 4 of the Trinity Act "specifically requires that preference customers in Trinity county receive 25 per centum of the power generated by the Trinity River Division." However, since the Trinity Act was not at issue in *Arizona Power Authority*, this language is dictum.

However, section 9(c) must be construed in light of the integration provisions of the Trinity and New Melones Acts. Because the statutes provide that the Trinity and New Melones plants be operationally and financially integrated into the CVP system, WAPA's assessment of appellants' rates, based on the operating costs of the CVP as a whole, was reasonable. Moreover, nowhere in either the Trinity or New Melones Acts is there reference to rates for first preference customers. The district court properly determined that appellants are not entitled to rates based on the operating costs of the Trinity and New Melones plants, as opposed to the operating costs of the CVP system.

### III. *Recovery of Intertie Power Costs in CVP Power Rates*

Appellants contend that their statutory entitlement to power arose in 1955 and 1962, when the Trinity and New Melones Acts were enacted, and that since their entitlement preceded Congressional authorization to import purchased power from the Intertie in 1964, Congress could not have intended first preference customers to receive or pay for Intertie power. In support of this contention, appellants rely on *United States v. Sacramento Municipal Utility District*, 652 F.2d 1341 (9th Cir. 1981) ("SMUD"). In particular, appellants underscore this court's statement regarding Reclamation Act section 9(c) set forth in SMUD:

> On its face this statute [section 9(c)] does not appear to permit the recovery of the cost of buying imported power. The Secretary is authorized to consider only maintenance, construction and other *fixed* costs in setting rates for the sale of electric power to Project customers. The purchase price of imported power is not a fixed cost.

*Id.* at 1345.

This statement must, however, be considered within the context of the SMUD facts and holding. In SMUD, the contract between SMUD and WAPA provided for "a rate formula based on ... 1) costs incurred in operating and maintaining Project facili-

ties; and 2) other costs recoverable under Federal Reclamation Law in effect in 1954." *Id.* at 1343. SMUD argued that this formula did not require it to pay for the cost of imported power since the Bureau of Reclamation was not authorized to purchase imported power in 1954. This court agreed, reasoning that because the contract limited the rate formula to "costs recoverable under Federal Reclamation Law in effect in 1954," and because the government was not authorized to import power until 1964, the costs of the imported power were not recoverable under § 9(c) of the Reclamation Act.

Unlike SMUD, the statutory provisions at issue here are not limited in scope to Reclamation Law in effect in 1954. The relevant statutes here grant preferences to "energy available from the Central Valley project power system." In addition, section 2 of the Trinity Act provides for integration "with the operation and other features of the Central Valley project, as presently authorized and as *may in the future be authorized* by Act of Congress." Pub.L. No. 84–386, 69 Stat. 719 (1955) (emphasis added). This language indicates that Congress may have forseen expansion of CVP features and operation, with a concomitant expansion of CVP power, by construction of the Intertie.

Appellants also raise the tenuous argument that the Intertie power is not part of the CVP system. They contend that this court determined in *SMUD* that imported power purchases are not part of the CVP system. This assertion is incorrect. In SMUD, the contract at issue defined "project" "in terms of the actual facilities of the power production plant in the Central Valley." *Id.* at 1344. This court observed that imported power involved no expansion of "project" facilities, "as that term is used in the rate setting provisions of the contract." *Id.* at 1345. We did not rule, as a matter of law, that imported power is not CVP power.

Indeed, the legislative history indicates that one reason for the Intertie's construction was to supply power to CVP preference customers. The Secretary of the Interior's Report recommending construction

of the Intertie included the following statement:

[p]reference customers of the Central Valley project of California will be assured of a power supply at low rates long after the time when the Bureau of Reclamation would have had to withdraw from them large blocks of power needed to serve new Bureau pumping loads.[3]

■ Since the Intertie power could reasonably be considered a feature of the CVP, the costs of Intertie power are properly includable in the rates charged to first preference customers.

### CONCLUSION

The New Melones and Trinity Acts entitle appellants to a percentage of CVP power. Although the source of appellants' entitlement may be the Trinity and New Melones plants, they are not entitled to preferential rates based on the operating costs of these plants alone, as opposed to operating costs of the CVP system as a whole. The costs of the Intertie power are therefore properly includable in the rates charged to appellants for CVP power. The district court's judgment is affirmed.

AFFIRMED.

---

3. Report to the Appropriations Committees of the Congress of the United States Recommending a Plan of Construction and Ownership of

EHV Electric Interties between the Pacific Northwest and Pacific Southwest, June 24, 1964.