Luis I. BATAYOLA, Plaintiff-Appellant,

v.

MUNICIPALITY OF METROPOLITAN SEATTLE, Defendant-Appellee.

No. 85–3884.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1986.

Decided Aug. 21, 1986.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 13, 1986.

Constance Wynn, Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Marc R. Kittner, Preston, Thorgrimson, Ellis & Holman, Seattle, Wash., for defendant-appellee.

Before WRIGHT, TANG and REINHARDT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

In this case we are asked to decide whether a part-time employee may be awarded backpay and seniority under the Veterans Readjustment Assistance Act as a remedy for missing an opportunity to apply for a full-time position while on military reserve duty training. The magistrate found the claimed benefit was not covered by the Act. We agree and affirm the decision below.

## FACTS

Batayola began to work as a part-time bus driver for the Municipality of Metropolitan Seattle (Metro) in May 1980. In February 1982, he took a one month leave of absence for Marine Corps reserve duty training. During his absence, Metro solicited applications from part-time bus drivers for full-time positions. When Batayola returned in March 1982, he was reinstated to his part-time position. He attempted to apply for a full-time position, but Metro refused because the recruitment period had ended.

Metro had received 426 applications for full-time work. The application process included performance evaluations, situational response video tests, and personal interviews. Based on Metro's cutoff score, only 105 of the 426 applicants proceeded to personal interviews. Successful applicants from the interviews were recommended for full-time positions and selected by seniority for training. Upon completion of the training, 97 applicants became full-time drivers.

During a new recruitment period in 1983, Batayola was selected for a full-time position, worked briefly for Metro, resigned and is no longer employed as a driver. He has no seniority rights with Metro. Metro concedes the selection process in 1983 was almost identical to that used in 1982.

In this action Batayola claimed retroactive seniority and backpay with prejudgment interest from April 2, 1982, the date he would have become a full-time driver had he been selected in the first recruitment period. The magistrate found the claimed benefit was based on merit, not continued employment, and was not a benefit covered by the Veterans Readjustment Assistance Act. Batayola timely appeals the grant of summary judgment for Metro.

## STANDARD OF REVIEW

We review de novo a summary judgment ruling on questions of law concerning statutory interpretation. *Trinity County Public Utilities District v. Harrington,* 781 F.2d 163 (9th Cir.1986).

## The Benefit

The Veterans Readjustment Assistance Act of 1974 provides that upon return from military leave, an employee shall be restored "to such position or to a position of like seniority, status and pay." 38 U.S.C. § 2021(a)(B)(i). The Act applies to reservists as well as returning veterans. 38 U.S.C. § 2024(a)-(b). *See also* 38 U.S.C. § 2021(b)(3).

The Act incorporates the "escalator principle" described in *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85, 66 S.Ct. 1105, 1110-11, 90 L.Ed.2d 1230 (1946). A veteran does not re-enter at the exact point he left his employment, but is entitled to a status he would have enjoyed if he had been employed continuously. 38 U.S.C. § 2021(b)(2).

Batayola contends his *right to apply* for a full-time position is the benefit protected by the Act because of his status as a part-time employee, but he seeks a retroactive award of the position as a remedy.

A claimed benefit is protected under the Act if it is reasonably certain to occur from continued employment. *Tilton v. Missouri Pacific Railroad Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964) (interpreting *McKinney v. Missouri-Kansas-Texas R.R.*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958)). The Act protects a missed opportunity to transfer only if a plaintiff can show that the transfer would have occurred had he been continuously employed. *McKinney*, 357 U.S. at 272, 78 S.Ct. at 1226-27.

We reject Batayola's contention that because he had a right to apply, he also had a right to a full-time position. The selection process was based on merit. He cannot show with reasonable certainty that full-time positions were awarded by virtue of *continuous employment*. Here, advancement to full-time driver was based on the applicants' fitness and ability. Considerations of fitness and ability create enough doubt about Batayola's selection for a full-time position that the reasonable certainty test is not satisfied.

## CONCLUSION

The transfers to full-time positions here depended more on fitness and ability than continued employment. Batayola cannot claim it was reasonably certain that, but for his military leave, he would have become a full-time driver based on his continued employment as the Act requires. The magistrate correctly found that the benefit claimed by Batayola here is not covered by the Veterans Readjustment Assistance Act.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I dissent. The Veterans Readjustment Assistance Act of 1974 protects the right of veterans and reservists to take advantage of opportunities for advancement in employment available to employees who do not perform military service. The Municipality of Metropolitan Seattle violated that right by refusing to provide Batayola with the opportunity to apply for a full-time position as bus driver upon his return from military reserve duty training. In concluding that because Batayola cannot claim with reasonable certainty that he would have been promoted to full-time driver had he been given the opportunity to apply, "the benefit claimed by Batayola ... is not covered by the ... Act," (majority opinion at 357) the majority confuses two related but different statutory rights. It applies law that is relevant to a claim of one such right (the right to automatic promotion) to a claim of a separate right (the right to take a promotional examination), although the latter claim is governed by entirely different legal principles.

### A. FACTS

Batayola was afforded a one month leave of absence, for military reserve training, from his job as part-time bus driver for the Municipality of Metropolitan Seattle. For one week during his absence, the Municipality solicited applications from part-time drivers for full-time positions and administered the test described in the majority opinion. The Municipality did not give notice of the upcoming application period pri-

or to the commencement of Batayola's leave. Immediately upon his return, Batayola requested the opportunity to apply for a full-time position. The Municipality denied his request on the ground that the application period had closed. The record does not disclose any other reason why the Municipality was unable or unwilling to accept Batayola's application.

One aspect of the Municipality's application and promotion procedure needs emphasis: The examinations administered during Batayola's absence served only to qualify individuals as eligible for future promotion. The Municipality offered actual promotions to those who received sufficiently high scores when and as it needed additional full-time drivers, and then according to the applicant's seniority. The purpose of the application and examination process in other words was not to fill a certain number of full-time positions immediately, but rather to create a pool of qualified drivers.

## B. ANALYSIS

As the majority notes, the Veterans Readjustment Assistance Act of 1974 incorporates the "escalator principle" from a predecessor act, the Selective Training and Service Act of 1940, re-enacted as the Military Selective Service Act of 1967. *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 195–96, 100 S.Ct. 2100, 2104–05, 65 L.Ed.2d 53 (1980). Under that principle, a returning veteran or reservist " 'does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously.' " *Id.* at 196, 100 S.Ct. at 2104 (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284–85, 66 S.Ct. 1105, 1110–11, 90 L.Ed. 1230 (1946)). The protection to seniority afforded returning military personnel by the original military service act of 1940 and by each successor act assures that the veteran or reservist will "not lose ground by reason of his absence." *Fishgold,* 328 U.S. at 285, 66 S.Ct. at 1111. The Veterans Readjustment Assistance Act also guarantees that a reservist will "not

be denied ... any promotion or other incident or advantage of employment because of any obligation" to the Reserves. 38 U.S.C. § 2021(b)(3) (1982).

Unless the Municipality's refusal to allow Batayola to apply for a full-time position upon his return from reserve duty was based on a valid work-related reason, the Municipality violated its obligation to restore Batayola to the same status and seniority as he would have enjoyed had he been employed continuously, 38 U.S.C. § 2024(d), as well as its obligation to not deny him any promotion or other incident or advantage of employment, 38 U.S.C. § 2021(b)(3). The guarantees of the Act were "designed to enable reservists ... to enjoy all of the *employment opportunities* and benefits accorded their coworkers who do not have military training obligations." Hearings on H.R. 11509 before Subcommittee No. 3 of the House Committee on Armed Services, 89th Cong., 1st Sess. 5312 (1966) (statement of Hugh W. Bradley, Director of the Office of Veterans' Reemployment Rights of the Labor Department) (emphasis added) (quoted in *Monroe v. Standard Oil Co.,* 452 U.S. 549, 558–59, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981)). The guarantee against a denial of promotion or any other incident or advantage of employment must extend to *opportunities* for promotion as well. If returning reservists are denied the opportunity to compete for a promotion, they in effect "lose ground by reason of [their] absence," *Fishgold,* 328 U.S. at 285, 66 S.Ct. at 1111. Whereas Batayola's coworkers were given an opportunity to advance, Batayola was held back for a year simply because the promotional tests were administered in his absence. Batayola thus did "not step back on the seniority escalator at the ... precise point he could have occupied had he kept his position continuously," *id.,* 328 U.S. at 284–85, 66 S.Ct. at 1110–11. The chance to compete for advancement is an "incident" or "advantage" of employment, 38 U.S.C. § 2021(b)(3), which may not be denied a reservist because of his or her military obligations.

Batayola made out a prima facie case that the Municipality violated his rights under the Veterans Readjustment Assistance Act by refusing to allow him to apply for a full-time position when he returned from training duty. The Act must be given a practical, common-sense meaning. An employer may have valid reasons for such a refusal. Had the Municipality needed to fill a certain number of full-time positions immediately and done so prior to Batayola's return, it would undoubtedly not be required under the Act to readminister the examination for openings that no longer existed. Such, however, was not the case here since the application process merely established a list of employees qualified for future promotion. Alternatively, if invoking the examination process for Batayola would have entailed disruption to the Municipality's normal operations or if the Municipality had called in experts to administer the examinations who were no longer available, the Municipality might have been justified in refusing to allow Batayola to apply. The record, however, is devoid of any evidence explaining the Municipality's refusal and, when asked at oral argument, the Municipality failed to offer any reason for its unwillingness to administer the test to Batayola. Rather, it rested its argument entirely on its legal theory that because Batayola was absent when the tests were administered he forfeited any right to be considered for promotion. Under these circumstances Batayola is entitled to summary judgment on the issue of the Municipality's liability under the Act. The majority decision affirming the grant of summary judgment to the Municipality is, in my opinion, erroneous.

Batayola's claim is readily distinguishable from the reservist's claim rejected by the Supreme Court in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981). Monroe contended that his employer denied him an "incident or advantage" of employment under 38 U.S.C. § 2021(b)(3) by failing "to schedule his work hours so he would avoid any lost time by reason of his reserve obligations," *id.* at 560, 101 S.Ct. at 2517. The Court held that Monroe failed to state a claim under the Act, noting that "[t]here is no evidence that the Congress that enacted § 2021(b)(3) showed any concern with the problem of missed work hours," *id.* at 564, 101 S.Ct. at 2519. The "purpose of the legislation was to protect employee reservists from discharge, *denial of promotional opportunities*, or other comparable *adverse* treatment solely by reason of their military obligations; there was never any suggestion of employer responsibility to provide preferential treatment." *Id.* at 562, 101 S.Ct. at 2518 (first emphasis added) (second emphasis in original).

The majority's application of the "reasonable certainty" test of *Tilton v. Missouri Pacific Railroad Co.*, 376 U.S. 169, 180, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964), to Batayola's claim misconstrues the nature of his claim. *Tilton* is applicable where the employee claims he has an automatic right, under the escalator principle, to the promotion itself, not where an employee claims he has a right to take a promotional examination. The majority confuses the right which Batayola alleges the Municipality violated with the remedy Batayola seeks for the violation of that right.

The majority concludes that the Municipality did not violate Batayola's right to apply for a full-time position because he did not prove that he would have received a promotion: "We reject Batayola's contention that because he had a right to apply, he also had a right to a full-time position.... He cannot show with reasonable certainty that ... but for his military leave, he would have become a full-time driver based on his continued employment as the Act requires." Majority opinion at 357. This analysis is seriously flawed. The Supreme Court developed the "reasonable certainty" test for evaluating veterans' claims that they had an automatic right to immediate promotion solely by virtue of their continued employment. The Court held that "Congress intended a reemployed veteran, who ... satisfactorily completes his interrupted training, to enjoy the seniority status which he would have ac-

quired by virtue of continued employment but for his absence in military service." *Tilton*, 376 U.S. at 181, 84 S.Ct. at 602. In order to establish a right to an automatic promotion a returning veteran (or reservist) must show that "as a matter of foresight, it was reasonably certain that advancement would have occurred, and [that], as a matter of hindsight, it did in fact occur." *Id.* A veteran (or reservist) cannot make that showing as a matter of law "where advancement depends on an employer's discretionary choice not exercised prior to entry into service." *Id.* at 180, 84 S.Ct. at 602 (interpreting *McKinney v. Missouri-Kansas-Texas R.R.*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958)).

Here, Batayola does not claim that he had a right to an automatic promotion upon his return from reserve duty, but rather that he had a right to apply for a promotion and to take the examination. He seeks retroactive seniority and backpay as a *remedy* for the Municipality's refusal to allow him to apply for a full-time position. There is no basis in reason or precedent for using the "reasonable certainty" test in determining whether the Municipality *violated* the Act when it denied Batayola the opportunity to take the examination. To the contrary, whether or not Batayola would have obtained a sufficiently high score on the examination to qualify for future promotion, the Act was violated. Moreover, on *that* question Batayola would pass the "reasonable certainty" test with flying colors. It is more than reasonably certain that he would have taken the examination had he not been on reserve duty. No one disputes that point.

It seems clear that a violation of the Act occurred. The real question is whether Batayola suffered an injury that entitles him to the relief he seeks. Had Batayola filed an action the day after the Municipality refused to allow him to apply for a full-time position and sought immediate relief, an appropriate remedy might have been an injunction ordering the Municipality to permit him to take the test. Now, however, Batayola seeks only actual monetary damages, including those resulting from loss of seniority. Batayola is entitled to prove his claim that he suffered monetary damages in accordance with the rules normally applicable to damage claims. In this case Batayola's entitlement to monetary damages is dependent on a determination whether he would have passed the test and, if so, when he would have been promoted. If Batayola would not have passed the examinations in 1982, his damages would be nominal at best. However, he has presented sufficient evidence in support of his claim that he would have been promoted in 1982 to at least raise a material factual issue and thus to avoid an adverse summary judgment on the damages issue. In fact, the evidence that he would have passed the test is sufficiently persuasive that summary judgment in his favor on the damages issue as well (except for the amount) may, in fact, be the proper result.

Finally, although I need not reach the question whether Batayola could meet the reasonable certainty test if applied (as the majority suggests) to the promotion itself, I find the majority's argument that he could not do so less than compelling. I think the answer to the question may depend on whether we consider the "situational response" portion of the examination to constitute an objective or subjective test and on whether it is clear that an individual's performance on that part of the examination would not differ materially from his performance in the immediately preceding year. I am inclined to believe that an exploration of the factual issues is required and therefore that summary judgment for the Municipality is inappropriate even under the majority's view of the law.

I would reverse the grant of summary judgment to the Municipality, grant summary judgment in Batayola's favor on the issue of liability and remand to the district court so that it may determine the proper amount of the damages.